IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LIFEWISE, INC.<br><br>    Plaintiff,<br><br>v.<br><br>ZACHARY PARRISH<br><br>    Defendant. | Case No.: 1:24-cv-00268-SLC |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

Defendant Zachary Parrish, by counsel, submits his Brief in Support of Motion to Dismiss for failure to state a claim and, pursuant to Federal Rule of Civil Procedure 12(b)(6), asks this Court to dismiss this case.

**INTRODUCTION**

Plaintiff LifeWise, Inc. ("LifeWise") is misusing copyright law in a blatant attempt to punish and silence a critic. LifeWise is a private organization that markets religious instruction for public school students. Defendant Zachary Parrish is a parent who, like many others, objects to the use of public school time for religious instruction. To educate parents about the specifics of what LifeWise teaches to public school students, and facilitate further commentary and activism, he acquired and shared the LifeWise elementary school curriculum on a critical website and a Facebook group, both called "Parents Against Lifewise." Both are entirely noncommercial and their purpose is clear from the name.

Mr. Parrish's admittedly salty characterizations aside, his use of the Curriculum was self-evidently fair under the fair use analysis set forth in Section 107 of the Copyright Act, and thus

1

was not an infringement of copyright. His purpose was distinct, transformative, and noncommercial. The work at issue is likely creative, but that is true of most fair use cases, and the curriculum is long since published. He posted the entire curriculum so that parents could fully comprehend and critique it, as necessary for his critical purpose. His use hasn't harmed any LifeWise licensing market, nor could it: there is no plausible market for licensing the curriculum in order to galvanize parents to oppose LifeWise.

LifeWise concedes all of this, and effectively concedes as well that Mr. Parrish's postings have not caused any harm to any LifeWise market—at least not any harm cognizable under copyright law. It nonetheless insists that it deserves $150,000 in compensation because it lost the fees it would have charged Mr. Parrish to access the curriculum—which is true of every fair use—and because Mr. Parrish's posting might encourage *others* to unlawfully copy the curriculum for some other purpose. If so, LifeWise's remedy is litigation against *those* hypothetical individuals. But that speculation has no bearing on whether *Mr. Parrish's* use was lawful.

As the Seventh Circuit has recognized, it can be important to call an early halt to copyright claims targeting fair uses. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (explaining that "infringement suits are often baseless shakedowns," but the "expense of discovery heightens the incentive to settle rather than defend these frivolous suits;" as such, "[d]istrict courts need not, and indeed ought not, allow discovery" in an "obvious case of fair use"). This case is a perfect example. A copyright claim is one of the few ways to get material taken offline quickly, thanks to the notice-and-takedown process established in Section 512 of the Digital Millennium Copyright Act, 17 U.S.C. § 512(c). LifeWise used that process, and Mr. Parrish called its bluff via a DMCA counter-notice. This litigation upped the ante,

particularly given the demand for $150,000 in damages. Most critics would be unable or unwilling to fight back in court under these circumstances.

Copyright should not be a means by which criticism is stifled with the backing of the courts. *Chicago Bd. of Educ. v. Substance, Inc.,* 354 F. 3d 624, 629 (7th Cir. 2003). The public interest is best served by ending this litigation now, before either Mr. Parrish or this Court is required to invest any further resources in it. Because LifeWise's complaint alleges facts conclusively establishing that Mr. Parrish's critical use of the LifeWise Curriculum was a fair use, this Court should dismiss the complaint.

## **ARGUMENT**

On a Rule 12(b)(6) motion, "the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). A dismissal under Rule 12(b)(6) is appropriate where the facts establishing an affirmative defense are "set forth unambiguously in the complaint." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009).[1] In a copyright infringement case, early dismissal is warranted when the facts are sufficient for a court to conclude as a matter of law that the challenged use qualifies as a fair use. *See Brownmark Films,* 682 F.3d. at 690; *Galvin v. Illinois*, 130 F. Supp. 3d 1187, 1191-92 n.1 (N.D. Ill. 2015). Copyright balances the benefits of incentives

---

[1] The "Parents Against Lifewise" website, https://parentsagaisntlifewise.online, to which Mr. Parrish posted the Curriculum, is referred to extensively in the Complaint and is central to LifeWise's claim. In a copyright infringement action, the original and allegedly infringing works referenced in the complaint are incorporated by reference into the complaint, and "supersede and control … any contrary allegations, conclusions or descriptions of the works contained in the pleadings." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*., 602 F.3d 57, 64 (2d Cir. 2010) (internal quotations omitted); *see also Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002). In the alternative, Mr. Parrish requests the Court take judicial notice of two excerpts from the website and has submitted herewith a request for judicial notice.

3

4276576

to create against the costs of restrictions on copying. This balancing act is reflected in the doctrine of fair use, codified in Section 107 of the Copyright Act, which provides: "[T]he fair use of a copyrighted work, ... *for purposes such as criticism,* comment, news reporting, teaching ... , scholarship, or research, is not an infringement of copyright." *Id. (emphasis added).* To determine whether a particular use is "fair," the statute enumerates four factors to be considered, in light of the purposes of copyright and the public interest. But the "ultimate test of fair use" is "whether the copyright law's goal of 'promoting the Progress of Science and useful Arts' would be better served by allowing the use than by preventing it." *Neri v. Monroe,* 2014 WL 793336, (W.D. Wis. 2014) (quoting *Castle Rock Entertainment v. Carol. Pub. Group,* 150 F.3d 132, 141 (2d Cir. 1998) (cleaned up)).

Based on LifeWise's own allegations, Mr. Parrish's use passes that test with flying colors.

**A. LifeWise Concedes Mr. Parrish's Transformative and Noncommercial Purpose.**

The first fair use factor "focuses on whether an allegedly infringing use has a further purpose or different character from the original work," including whether it is noncommercial. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527-540 (2023) ("[T]he first fair use factor … focuses on whether an allegedly infringing use has a further purpose or different character, which is a matter of degree, and the degree of difference must be weighed against other considerations, like commercialism.").

LifeWise alleges that it is a Christian ministry that provides religious instruction to public school students via local chapter programs. ECF No. 1, Complaint ("Cmplt.") ¶ 16. As part of that operation, it makes the LifeWise Curriculum available to those local chapters, for a fee. Cmplt. ¶ 28. Its alleged purpose in developing and sharing the Curriculum is to offer "traditional, character-based, Biblical teaching during school hours." Cmplt. ¶ 2.

4

Mr. Parrish's purpose in sharing the Curriculum could hardly be more distinct. According to LifeWise, he does not support LifeWise's mission; instead, his "goal" is to "publish information online which might harm LifeWise's reputation and galvanize parents to oppose local LifeWise chapters in their communities." Cmplt. ¶ 31. In other words, he is a critic, who posted the Curriculum to further his criticism and educate the public. Even the name of his website, identified in the Complaint, reflects that purpose: "parentsagainstlifewise.online." The website itself, which is incorporated by reference into the Complaint, is replete with further evidence. Its homepage announces that "Our mission is to protect our children and preserve our public education system by connecting parents and communities across the nation to accurate and transparent information." (Exhibit A.)[2] And "[t]he more we discovered about Lifewise Academy, the more driven we became to educate and warn other parents, schools, and communities." (Exhibit B.)

Moreover, Mr. Parrish's use is obviously noncommercial. While LifeWise vaguely alleges that Mr. Parrish sought to "reap the creative benefit and value" of the Curriculum, the thrust of the Complaint is clear— the only "benefit" Mr. Parrish seeks is the ability to fully inform parents about LifeWise's instruction in order to "galvanize parents to oppose" it. "There is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021).

LifeWise intimates that Mr. Parrish acted in bad faith by submitting a "fraudulent volunteer application" in order to "improperly gain access" to the Curriculum. ¶32. But the Supreme Court has "expressed some skepticism about whether bad faith has any role to play in a

---

[2] Defendant has attached documents as "Exhibit A" and "Exhibit B" to both this Brief and Defendant's Request for Judicial Notice.

fair use analysis." *Google,* 593 U.S. at 32. Even taking the allegations of the complaint as true and assuming arguendo that it has a role to play here, bad faith is not dispositive "of the fair use question, or even of the first factor." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004) (citation omitted).

    **B. The Nature of the Works Is Neither Disputed Nor Dispositive.**

The second fair use factor turns on whether the work is more or less creative, and whether or not it has been published. *See generally Bell v. Milwaukee*, 2022 WL 18276966 *5 (E.D. Wis. 2022) (citing *Campbell* and *Harper*). This factor "has rarely played a significant role in the determination of a fair use dispute," *Authors Guild*, 804 F.3d at 220, and this case is no exception. LifeWise describes the Curriculum as Biblical instruction that "includes videos, activity pages, leader guides, cards and printables." Cmplt. ¶ 24. Accordingly, the Court can reasonably assume that it contains a mix of creative work, Biblical passages, and purely factual and non-creative elements as well. Given this jumble of characteristics, the "creativity" subfactor is not likely to offer much illumination to the analysis.

Moreover, if the disputed use of the work "is not related to its mode of expression but rather to its historical facts" then creativity matters even less to the analysis. *Red Label Music Pub., Inc. v. Chila Productions,* 388 F. Supp. 3d 975, 986 (N.D. Ill. 2019) (quoting *Bouchat v. Baltimore Ravens Ltd. P'ship*, 737 F.3d 932, 943 (4th Cir. 2013), *as amended* (Jan. 14, 2014)). Here, Mr. Parrish posted the Curriculum in order to make parents and the public aware of its content, not to appropriate its creative aspects.

As for the second subfactor, the Copyright Act defines "publication" to include "offering to distribute copies . . . to a group of persons for purposes of further distribution, public performance, or public display." 17. U.S.C. § 101. Thus, LifeWise published the Curriculum

when it disseminated it to LifeWise Academy chapters "across the United States" for further dissemination to students. Cmplt. ¶ 27.

### C. Mr. Parrish Used What Was Necessary for His Critical Purpose.

The third factor favors fair use where the amount of the original work used is "reasonable in relation to the purpose of the copying," *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 586 (1994), including whether the substantiality of the challenged use "was tethered to a valid, and transformative, purpose." *Google* 593 U.S. at 34. The copying of entire works is fair use when it reasonably fulfills the user's purpose. *See, e.g., Sony*, 464 U.S. at 449-50 (copying of entire television programs for time-shifting is fair use); *Lexmark*, 387 F.3d at 544 (copying of entire computer program as required for compatibility with printer is fair use); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,* 756 F.3d 73, 90 (2d Cir. 2014) (copying and distribution of entire recordings of press conferences was "reasonable in light of its purpose of disseminating important financial information to investors and analysts").

It is necessary here. LifeWise concedes that Mr. Parrish seeks to educate parents about the LifeWise Curriculum. Cmplt. ¶46. But it also concedes that LifeWise itself offers to the public only a summary, albeit one that LifeWise considers "comprehensive." *Id*. Based on LifeWise's allegations, the Curriculum is extensive, including "videos, activity pages, leader guides, cards, and printables." Cmplt. ¶ 24. It is not plausible to infer that a 27-page summary, created by LifeWise itself—not exactly an objective source—would be adequate to fully educate parents or the public about what public school children might be learning during school hours from first grade through fifth grade, any more than a summary of the New Testament could substitute for actually reading it.

### D. LifeWise Does Not and Cannot Plausibly Allege Market Harm.

LifeWise's allegations of harm illustrate their inability to show it.

Where, as here, a use is highly transformative, only a strong showing of harm will weigh against fair use. When a use is transformative and non-economic, as in this case, market harm is less likely to exist or weigh against a finding of fair use. *See Bouchat*, 619 F.3d at 315 ("The transformative and noncommercial use … and the lack of evidence about market harm leads us to weigh the market effect factor in favor of a finding of fair use.").

Moreover, "only an impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets should be legally cognizable when evaluating a secondary use's effect upon the potential market for or value of the copyrighted work." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994) (cleaned up). There is "no protectible derivative market for criticism," because "[t]he market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop," and it is unlikely that a rightsholder will license criticism. *Campbell*, 510 U.S. at 592; *see also Kienitz v. Sconnie Nation LLC*, 766 F.3d 756, 759 (7th Cir. 2014) (recognizing that the goal of fair use "is to facilitate a class of uses that would not be possible if users always had to negotiate with copyright proprietors").

LifeWise's allegations illustrate just this problem. LifeWise would never license the Curriculum for what it describes as Mr. Parrish's intended use to "galvanize parents to oppose local LifeWise chapters in their communities." Cmplt. ¶ 31. It concedes it would only license to Mr. Parrish, or anyone else, subject to "the restrictions that LifeWise is entitled to and would place on" use of the Curriculum, "including the right to deny permission altogether." Cmplt. ¶ 47.

Even if the Court accepts that LifeWise lost out on the licensing fees Mr. Parrish would otherwise have had to pay, that should not change the analysis. "A copyright holder can *always*

8

assert some degree of adverse affect . . . simply because the copyright holder has not been paid a fee to permit that particular use." *Red Label*, 388 F. Supp. 3d at 987 (italics in original).

LifeWise also suggests that internet users, including "some local programs," will download the Curriculum from the Parents Against LifeWise website and use it, contrary to Mr. Parrish's goals, for the religious instruction of public school students. Cmplt. ¶¶ 49-50. Even taking this alleged harm at face value, Mr. Parrish cannot be held liable for what *other people* might hypothetically do; the question before the Court is whether Mr. Parrish's *own* use is unlawful. *See Campbell*, 510 U.S. at 579 (fair use consideration "is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis").

LifeWise finally complains that Mr. Parrish has "misappropriated" its investment of "time and money" in creating the Curriculum. Cmplt. ¶ 51. But copyright law is not concerned with the investment of time and money; it is concerned with fostering creativity. *Feist Publications v. Rural Telephone Service,* 499 U.S. 340, 360 (1991) ("[O]riginality, not 'sweat of the brow,' is the touchstone of copyright protection."). And market effects that "occur in relation to interests that are not protected by the copyright" are not relevant to the factor four analysis. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 224 (2d Cir. 2015).

Taken together, none of these allegations support a plausible claim that Mr. Parrish's use has, or will, harm any traditional, reasonable, or likely to be developed market.

### E. The Public Interest

Every fair use factor, assessed based on LifeWise's own statements and weighed in light of the purposes of copyright, firmly favors fair use. Mr. Parrish posted the Curriculum in order to educate the public on a matter of significant public concern. LifeWise objects to that posting, at root, because it might galvanize opposition to LifeWise and/or allow others to download and use

the materials to mimic LifeWise's own ministry. But several courts have found that posting material on the internet with no commercial motive, but solely to educate the public on a matter of great public concern, is a classic fair use. *See, e.g, Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1267 (D.C. Cir. 2023) (standards incorporated by reference into law); *Online Policy Grp. v. Diebold*, 337 F. Supp. 2d 1195, 1203 (N.D. Cal. 2004) (integrity of state elections); *Righthaven LLC v. Jama*, 2:10–CV–1322 JCM LR, 2011 WL 1541613, at *3 (D. Nev. Apr. 22, 2011) (alleged police misconduct). Reputational risks are not copyright law's concern. *See Garcia v. Google, Inc*., 786 F.3d 733, 745 (9th Cir. 2015). The possibility that *someone else* could theoretically make further copies of the works in question and use them for other purposes, creating a "market substitute," did not defeat fair use in those cases and it should not do so here.

## CONCLUSION

Mr. Parrish's posting of the LifeWise Curriculum, as described in LifeWise's complaint, was a self-evident fair use, and thus did not infringe any copyright. This Court should dismiss the complaint and end LifeWise's improper attempt to punish a critic.

Respectfully Submitted,

BARRETT MCNAGNY LLP

*/s/ William A. Ramsey*_____
William A. Ramsey, #26547-53
215 E. Berry Street
Fort Wayne, IN 46802
Telephone: (260) 423-9551
Fax: (260) 423-8920
Email: war@barrettlaw.com

*Attorneys for Defendant Zachary Parrish*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 26th of August 2024, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which shall provide notification by email of such filing to all counsel of record.

                                       *William A. Ramsey*
                                       William A. Ramsey

4276576