# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| LifeWise, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Zachary Parrish, <br><br> Defendant. | Case No.: 1:24-cv-00268-SLC <br><br> Chief Judge Holly A. Brady <br><br> Magistrate Judge Susan L. Collins |

### PLAINTIFF LIFEWISE'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Defendant Mr. Zachary Parrish's fair-use defense flies in the face of binding case law. Under his fair-use theory, "fair" use allows someone who disagrees with certain copyrighted material to obtain a copy of that material by fraud—then dump the entire contents onto the web, undercutting the material's commercial value. This would not work for conservative parents uploading entire pirated movies to a "Parents Against Hollywood" website. And it does not work here. Indeed, "[i]t is preposterous to think that Internet piracy is authorized by virtue of the fair use doctrine." *United States v. Slater*, 348 F.3d 666, 669 (7th Cir. 2003). The Court should reject Parrish's far-fetched fair-use defense and grant LifeWise summary judgment.

## LEGAL STANDARD

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Put another way, "a motion for summary judgment should be

1

granted when the record is such that if it were the record of a trial no reasonable jury could find for the party opposing the motion." *Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997) (affirming grant of summary judgment on copyright claim). "Evidence that is not 'significantly probative' will not justify a trial." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Fair use is a mixed question of law and fact," *Harper & Row Publishers, Inc. v. Nation Enter.*, 471 U.S. 539, 560 (1985), which means that it "may be resolved on summary judgment." *Narell v. Freeman,* 872 F.2d 907, 910 (9th Cir. 1989).

Relevant here, Parrish's motion to dismiss based on a fair-use defense makes it clear that both parties view this dispute as ripe for decision as a matter of law.[1] *See, e.g.*, Def. Mot. at 3 (contending that "[t]he public interest is best served by ending this litigation now" because "LifeWise's complaint alleges facts conclusively establishing that Mr. Parrish's critical use of the LifeWise Curriculum was a fair use").

## ARGUMENT

### I. Parrish Violated Copyright Law by Dumping LifeWise's Entire Curriculum onto His Website.

Parrish engaged in intentional copyright infringement under Section 501 of the Copyright Act. 17 U.S.C. §501. "To establish a successful copyright infringement claim, [a plaintiff] must show [1] that she owns the copyright and [2] that [the defendant] copied protected elements of the work." *Narell*, 872 F.2d at 910. Neither element is in dispute here. LifeWise owns the copyright in and to the Curriculum. *See* Compl. Ex. A. And Parrish "posted the entire Curriculum" on his Website, "Parents Against LifeWise." Def. Mot. at 1–2. Thus, Parrish infringed LifeWise's copyright.

The Court should at least grant LifeWise summary judgment on Parrish's liability. But in addition, the Court should hold that LifeWise is entitled to statutory damages under federal law, including the maximum statutory damages pursuant to 17 U.S.C. § 504(c) in the amount of $150,000

---

[1] As discussed in LifeWise's contemporaneously filed brief in opposition to Parrish's motion to dismiss, the motion to dismiss should be treated as a motion for summary judgment. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692 (7th Cir. 2012) (determining that defendant's Rule 12(b)(6) motion to dismiss based on fair use should be treated as a summary-judgment motion).

for Parrish's willful infringing conduct. And the Court should hold that LifeWise is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. §505.

Finally, the Court should award LifeWise the injunctive relief it seeks in its Complaint. *See* Compl. ¶¶61–62. The Court should order Parrish to destroy or deliver up for destruction all materials in his possession, custody, or control used in connection with his infringing conduct, including without limitation all remaining copies of LifeWise's Curriculum and any products and works that embody any reproduction or other copy or colorable imitation of LifeWise's Curriculum. *See* Compl. ¶62. And the Court should permanently enjoin Parrish, his agents, affiliates, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

**a.** distributing, displaying, or publishing or authorizing any third party to distribute, display, or sell LifeWise's Curriculum and any products, works, or other materials that include, copy, are derived from, or otherwise embody LifeWise's Curriculum; and

**b.** aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraph (a).

## II.    Parrish Lacks a Fair-Use Defense.

Parrish's sole defense to LifeWise's copyright-infringement claim is fair use. *See generally* Def. Mot. "The burden of proof is on the copier because fair use is an affirmative defense[.]" *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003). Parrish's defense fails—on all four statutory factors. *See* 17 U.S.C. §107. Indeed, Parrish's far-fetched fair-use theory would swallow basic copyright protections.

### A.    Dumping LifeWise's entire Curriculum onto Parrish's Website fails the first fair-use factor.

"The first fair use factor is 'the purpose and character of the use[.]'" *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 527 (2023) (quoting 17 U.S.C. §107(1)). "This factor considers the reasons for, and nature of, the copier's use of an original work." *Id.* at 527–28. "The 'central' question it asks is 'whether the new work merely supersedes the objects of the original

creation … (supplanting the original), or instead adds something new, with a further purpose or different character.'" *Id.* (alteration accepted) (internal quotation marks omitted) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)).

### 1. Posting a pirated version of LifeWise's Curriculum is not criticism and transforms nothing.

**a.** First, posting the LifeWise Curriculum is not "criticism." "It is preposterous to think that Internet piracy is authorized by virtue of the fair use doctrine." *Slater*, 348 F.3d at 669. To be sure, Parrish disagrees with LifeWise's values. Def. Mot. at 5. He holds a different philosophy of life. But that does not make posting the entire Curriculum "criticism." Consider a critical book review, for example. The reviewer is creating "something new"—namely, the "review." *Andy Warhol Found.*, 598 U.S. at 529, 528 n.4. The reviewer quotes excerpts from the book reviewed for the purpose of providing commentary on it. *Id.* at 528 n.4. The reviewer may dislike the values in the book and may even write the review in the hopes of destroying the commercial value of the book by critiquing it trenchantly. But the reviewer's "critical purpose" is not what makes his use of excerpts transformative. *Contra* Def. Mot. at 2. Rather, it is because his review creates something different from the book itself, "something new." *Andy Warhol Found.*, 598 U.S. at 529; *see also id.* at 528 n.4. Thus, "were a book reviewer to quote the entire book in his review, or so much of the book as to make the review a substitute for the book itself, he would be cutting into the publisher's market, and the defense of fair use would fail." *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 517 (7th Cir. 2002).

Or consider parody. Parody "'presents a difficult case'" because it often requires using the "'heart'" of the original work to "create the intended allusion." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 693 (7th Cir. 2012) (quoting *Campbell*, 510 U.S. at 588). But as with a proper book review, fair-use parody "adds something new" in its "comment on and critique" of the original work. *Id.*

By contrast, dumping LifeWise's entire Curriculum onto "Parents Against LifeWise" is not criticism—any more than a homeschooling parent uploading pirated Hollywood movies is engaging in criticism simply because the parent vehemently disagrees with the values promoted in the

4

movies. *Chicago Board of Education v. Substance, Inc.*, 354 F.3d 624 (7th Cir. 2003), illustrates this well. In that case, a Chicago public school teacher published six (out of 22 to 44) standardized tests, which the school board had created, copyrighted, and kept secret to make the test questions reusable. *Id.* at 626, 629. The teacher published the tests "because he thought them bad tests and that he could best demonstrate this by publishing them in full." *Id.* at 627. In affirming the district court's rejection of the teacher's fair-use defense, the Seventh Circuit reasoned that "there is no right to copy copyrighted works promiscuously merely upon a showing that they are bad." *Id.* at 630.

The same analysis applies here. The fact that Parrish's mental state is a "critical" one rather than a supportive one does not make posting the Curriculum "criticism." *Contra* Def. Mot. at 2. That reasoning would allow unbounded Internet piracy—so long as the pirate's website states that he is uploading copyrighted works solely to "further his criticism and educate the public." *Id.* at 5. Nor can Parrish post the Curriculum simply because he thinks it bad and believes he can "best demonstrate this by publishing [it] in full." *Chicago Bd. of Educ.*, 354 F.3d at 627; *see* Def. Mot. at 2 (asserting that "[Parrish] posted the entire curriculum so that parents could fully comprehend and critique it").

**b.** Second, posting the Curriculum transforms nothing. "Transformative" is a term of art in copyright law. It is not enough to change an original work only slightly. Rather, "'transformativeness' is a matter of degree." *Andy Warhol Found.*, 598 U.S. at 529. The reason for this is straightforward: "the owner has a right to derivative transformations of her work." *Id.* So, "the adaptation of a book into a movie" may "substantial[ly]" transform the book—but that does not exempt the moviemakers from having to respect the rights of the book's copyright owner. *Id.* The movie is the "derivative work[]," and the book's copyright owner has an "exclusive right" to create such works. *Id.* "To preserve that right, the degree of transformation required to make 'transformative' use of an original must go beyond that required to qualify as a derivative." *Id.*

In sum, for a secondary user like Parrish to have a plausible claim to transformativeness, the secondary work must have *some* degree of transformation. A book is transformed into a book review.

5

*See Andy Warhol Found.*, 598 U.S. at 528 n.4. A viral internet video is transformed into a *South Park* parody. *See Brownmark Films*, 682 F.3d at 693. A black-and-white photograph of Prince becomes an orange silkscreen portrait by Andy Warhol. *See Andy Warhol Found.*, 598 U.S. at 516–17, 534. But "some" transformation is not enough. The transformation must be "substantial" enough to place the secondary work outside the bounds of the copyright owner's right to derivative works. *Id.* at 529. "The smaller the difference [between the original and the secondary work], the less likely" it is that the first factor weighs in favor of fair use. *Id.*

Here, there is no transformation at all. The "secondary work" (LifeWise's Curriculum) *is* the original work. Posting LifeWise's entire Curriculum does not create "something new" (other than a pirated, free version). *See Andy Warhol Found.*, 598 U.S. at 527 (quoting *Campbell*, 510 U.S. at 579). The only new thing Parrish created is a copyright violation.

### 2. In addition, Parrish's bad faith further undermines his fair-use defense because fair use presupposes good faith and fair dealing.

Parrish's bad faith also weighs heavily against his fair-use defense. Parrish submitted a fraudulent volunteer application to gain access to LifeWise's Curriculum. Compl. ¶¶ 5, 32. Parrish points to no evidentiary basis suggesting a genuine issue of material fact on this point. Rather, he obliquely states that "[t]o educate parents about the specifics of what LifeWise teaches to public school students, and facilitate further commentary and activism, he *acquired and shared* the LifeWise elementary school Curriculum on a critical Website and a Facebook group, both called 'Parents Against Lifewise.'" Def. Mot. at 1 (emphasis added). LifeWise did not willingly give Parrish access to its Curriculum—that is the entire basis of this lawsuit, as Parrish concedes. *See* Def. Mot. at 2–3. Instead, Parrish argues that, even assuming he fraudulently obtained the Curriculum, he still wins on fair use as a matter of law. He contends that (1) the Supreme Court has "expressed some skepticism about whether bad faith has any role [] in a fair use analysis," *id.* at 5–6 (quoting *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021)); and (2) "bad faith is not dispositive." *Id.* at 6.

Bad faith may not be dispositive. But it is certainly relevant. And here, it weighs heavily against Parrish's fair-use defense. "When an alleged infringer raises an affirmative defense, the baseline

6

rule is that '[f]air use presupposes good faith and fair dealing.'" *Brammer v. Violent Hues Prods., LLC*, 922 F.3d 255, 265–66 (4th Cir. 2019) (alteration in original) (quoting *Harper & Row*, 471 U.S. at 562 (internal quotation marks omitted)). Therefore, bad faith can weigh against a fair-use defense because it is a violation of good faith and fair dealing even though good faith may not weigh in favor of fair-use. *Compare Harper & Row*, 471 U.S. at 562 (rejecting fair-use defense where defendant "knowingly exploited a purloined manuscript"), *with Brammer*, 922 F.3d at 265 (holding that defendant's claim of good faith "does nothing to aid its fair use defense").

The Supreme Court's decision in *Harper & Row* remains good law. Indeed, the Federal Circuit has held that "[t]o invoke the fair use exception, an individual must possess an authorized copy of a literary work." *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 843 (Fed. Cir. 1992) (citing *Harper & Row,* 471 U.S. at 562–63) ("Because Atari was not in authorized possession of the Copyright Office copy of [a computer program], any copying or derivative copying of [the computer program] source code from the Copyright Office does not qualify as a fair use."); *see also DSC Commc'ns Corp. v. DGI Techs., Inc.*, 898 F. Supp. 1183, 1194 (N.D. Tex. 1995) (relying on the Federal Circuit's holding in *Atari* to conclude that "[b]ecause [defendant] was not authorized to possess the downloaded copies of [plaintiff's] operating system software, any copying, study or derivative copying by [defendant] of the operating system software does not qualify as fair use"), *aff'd*, 81 F.3d 597 (5th Cir. 1996); *TELUS Corp. v. Watson*, No. C 07-3434 VRW, 2009 WL 10703326, at *7 (N.D. Cal. Nov. 13, 2009) (citing *Atari* and holding that "[a]s a result of defendant's posting of purloined copies of plaintiff's works, his actions lacked good faith; his attempt at mounting a fair-use defense therefore fails").

To be sure, the Supreme Court has noted that its "decision in *Campbell* expressed some skepticism about whether bad faith has any role in a fair use analysis[,]" citing a footnote in *Campbell*. *Google*, 593 U.S. at 32. But the Court did not overrule *Harper & Row*. Indeed, the Court expressly declined to rule on the issue, merely noting that "given the strength of the other factors pointing toward fair use and the jury finding in Google's favor on hotly contested evidence," Google's good faith was not "determinative in this context." *Id*. at 32–33.

7

No one factor is dispositive in the fair-use analysis. *See Chicago Bd. of Educ.*, 354 F.3d at 629. But here, failing the first factor undercuts Parrish's defense at the outset. His bad-faith dumping of LifeWise's entire Curriculum onto "Parents Against LifeWise" is not criticism and transforms nothing. The posted Curriculum remains what it was from the beginning: LifeWise's—not Parrish's—creative work.

### B.    Parrish fails the second fair-use factor.

The second statutory factor is "the nature of the copyrighted work." 17 U.S.C. §107(2). Parrish concedes that LifeWise's Curriculum "contains a mix of creative work." Def. Mot. at 6. As one of Parrish's cited cases determined, where a work of nonfiction merely bore "elements of creativity," this "consideration favor[ed] [the copyright owner]." *Bell v. Milwaukee Bd. of Sch. Dirs.*, No. 22-C-0227, 2022 WL 18276966, at *5 (E.D. Wis. Dec. 21, 2022). Parrish contends that he "posted the Curriculum in order to make parents and the public aware of its content, not to appropriate its creative aspects," Def. Mot. at 6, but his mental state has no bearing on the second factor. Again, the case law Parrish relies on undermines his fair-use theory. While "copyright does not protect facts or ideas set forth in a work, it does protect that author's manner of expressing those facts and ideas." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 220 (2d Cir. 2015) (concluding that "[w]hile each of the three Plaintiffs' books in this case is factual, we do not consider that as a boost to Google's claim of fair use."). Here, LifeWise's Curriculum (which includes videos, activity pages, leader guides, cards, and printables) contains at least some creative work, as Parrish concedes. Compl. ¶¶24, 47, 51; Def. Mot. at 6. Yet Parrish uploaded the entire Curriculum. As a matter of law, Parrish's use fails the second factor.

### C.    Parrish fails the third fair-use factor because dumping LifeWise's entire Curriculum onto Parrish's Website was not reasonably necessary.

"The third factor asks whether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole,' § 107(3) (or, in Justice Story's words, 'the quantity and value of the materials used,') are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (citation omitted) (quoting *Folsom v. Marsh,* 9 F. Cas. 342, 348 (CCD Mass.

8

1841)). This factor analyzes how much of the original work was copied, and whether that portion constitutes the "heart" of the copyrighted work. *Harper & Row,* 471 U.S. at 564–65. Judge Posner explained the standard like this: "the fair use copier must copy no more than is reasonably necessary … to enable him to pursue an aim that the law recognizes as proper[.]" *Chicago Bd. of Educ.*, 354 F.3d at 629.

Whether "a substantial portion of the infringing work was copied verbatim from the copyrighted work is a relevant question." *Campbell*, 510 U.S. at 587 (quotation omitted). True enough, "wholesale copying does not preclude fair use per se[.]" *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1118 (9th Cir. 2000) (quotation omitted). Copied works can become part of a different, larger whole—a distinct creative work that "adds something new," *Andy Warhol Found.*, 598 U.S. at 528, and thus fulfills copyright law's "ultimate aim … to stimulate artistic creativity for the general public good." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 526–27 (1994) (quotation omitted). Nevertheless, "copying an entire work militates against a finding of fair use." *Worldwide Church of God*, 227 F.3d at 1118 (quotation omitted) (holding that the third factor "weigh[ed] against fair use" where defendant engaged in "verbatim copying of the whole work").

It was not reasonably necessary for Parrish to post the entire Curriculum. (And, as discussed above, merely posting it is not criticism.) Like the defendant in *Chicago Board of Education*, Parrish contends that posting the Curriculum counts as fair use because he intended to criticize it. *See* Def. Mot. at 5. But the Seventh Circuit already rejected Parrish's argument. Parrish's interpretation "overreads [the court's] decision in *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512 (7th Cir. 2002), to hold that a purpose of criticizing creates a privilege of unlimited copying regardless of the harm to the copyright owner's legitimate interests." *Chicago Bd. of Educ.*, 354 F.3d at 628.

So too with Parrish's asserted educational goal. Parrish contends that he "seeks to educate parents about the LifeWise Curriculum," and complains that LifeWise's publicly available "27-page summary" of its Curriculum is not "adequate to fully educate parents or the public about what public school children might be learning during school hours from first grade through fifth grade." Def. Mot. at 7. But Parrish could have lawfully acquired the Curriculum, then compared

the summary of the Curriculum to quotations or screenshots from the Curriculum showing what he found objectionable. He could have written a critical review. Instead, Parrish lazily dumped the entire Curriculum onto the Internet without engaging in any substantive criticism. Moreover, LifeWise—which as the copyright holder has the exclusive right to control its own creative work—has made a *read-only* version of the Curriculum available for a limited time to individuals who sign up to review it and agree not to "copy, print, download, screenshot, share or distribute the Curriculum." *See* https://lifewise.tfaforms.net/4972189.[2]

As the Seventh Circuit has held, "there is no right to copy copyrighted works promiscuously merely upon a showing that they are bad." *Chicago Bd. of Educ.*, 354 F.3d at 630. Of course, Parrish has not made a showing that the Curriculum is "bad" (nor could he), but that dispute is not material here. Parrish cannot justify posting the entire Curriculum simply because he thinks his educational and critical purposes are "best demonstrate[d] … by publishing [it] in full." *Chicago Bd. of Educ.*, 354 F.3d at 627; *see also BMG Music v. Gonzalez*, 430 F.3d 888, 891 (7th Cir. 2005) ("downloading full copies of copyrighted material without compensation to authors cannot be deemed 'fair use.'").

Other courts have also rejected a fair-use defense when defendants unnecessarily copied an entire work. The Northern District of California was "unconvinced that [defendant's] wholesale copying of [plaintiff's] works with little or no commentary was necessary for his critical purposes." *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 923 F. Supp. 1231, 1247 n.17 (N.D. Cal. 1995). When a "[defendant] has copied entire works," the Second Circuit found this "weights the third factor in favor of the publishers." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 926 (2d Cir. 1994). Very recently, the Second Circuit held that where a defendant "ma[de] unauthorized digital copies of the Works and reveal[ed] those copies to the public in their entirety," the third factor "favor[ed] Publishers." *Hachette Book Grp., Inc. v. Internet Archive*, No. 23-1260, ---

---

[2] Parrish asked the Court to take judicial notice "of two excerpts from the website." Def. Mot. at 3 n.1. LifeWise does not object to the Court taking judicial notice of the excerpts or the Website on a motion for summary judgment and likewise requests the Court to take judicial notice of this LifeWise Curriculum review webpage.

10

F.4th---, 2024 WL 4031751, at *14 (2d Cir. Sept. 4, 2024).

  The same analysis applies here. Parrish dumped the entire Curriculum onto the Internet where anyone could download it for any purpose. This was neither reasonable nor necessary. Parrish did not create "something new." *Andy Warhol Found.*, 598 U.S. at 529. He did not alter the Curriculum. He did not parody the Curriculum. He made the Curriculum available for free without LifeWise's consent—undermining the Curriculum's commercial value—allegedly hoping others would view it and criticize it.

  **D.** **Parrish's copyright infringement will harm LifeWise's market.**

  The fourth and final statutory factor concerns "the extent of market harm caused by the particular actions of the alleged infringer" and "'whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market' for the original." *Campbell*, 510 U.S. at 590 (ellipses in original) (quoting 3 M. Nimmer & D. Nimmer, Nimmer on Copyright §13.05[A][4] (1993)); *see also Campbell*, 510 U.S. at 594 (defendant asserting fair-use defense was not entitled to summary judgment where the record was silent on whether the parody would harm the original work's derivative market). Although all four factors must be weighed together, *see id.* at 578, the fourth factor is central to the fair-use analysis. *See* 3 Nimmer §13.05[A][4], at 13-188 to –189 (citing *Harper & Row*, 471 U.S. at 566), 13–207 (observing that fourth factor explains results in recent Supreme Court cases).

  "[T]he role of the courts is to distinguish between biting criticism that merely suppresses demand and copyright infringement, which usurps it." *Campbell*, 510 U.S. at 592 (alterations accepted) (quotation marks omitted). "The copyright laws are designed to give people incentives to produce new works. They allow people to collect the reward for their contributions." *Rockford Map Publishers, Inc. v. Directory Serv. Co. of Colorado*, 768 F.2d 145, 148 (7th Cir. 1985) (citations omitted). "If the incremental contribution is small, so too is the reward, but a subjective assessment of the importance of the contribution has nothing to do with the existence of copyright." *Id.* "[A] work composed primarily of an original, particularly its heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original." *Campbell*, 510 U.S. at

11

587–88. For example, "were a book reviewer to quote the entire book in his review, or so much of the book as to make the review a substitute for the book itself, he would be cutting into the publisher's market, and the defense of fair use would fail." *Ty*, 292 F.3d at 517; *see also Harper & Row*, 471 U.S. at 562; *Consumers Union of United States, Inc. v. Gen. Signal Corp.,* 724 F.2d 1044, 1051 (2d Cir. 1983). This undermines Parrish's contention that "[t]here is 'no protectible derivative market for criticism.'" Def. Mot. at 8 (quoting *Campbell*, 510 U.S. at 592. As discussed above, dumping LifeWise's Curriculum onto Parrish's Website is not criticism. There may not be a protectible derivative market for critical commentary on the Curriculum, but there is certainly a protectible market for the Curriculum *itself*—which is what Parrish posted.

Parrish also contends that LifeWise alleges no *past* harm from his conduct. *See* Def. Mot. at 7–9. But that is irrelevant. "A challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, *or that if it should become widespread, it would adversely affect the potential market* for the copyrighted work. Actual present harm need not be shown …." *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984) (emphasis added). Parrish asserts that he "cannot be held liable for what *other people* might hypothetically do; the question before the Court is whether Mr. Parrish's *own* use is unlawful." Def. Mot. at 9 (emphasis in original). Incorrect. The Supreme Court rejected this argument in *Sony*: "[S]uch a requirement would leave the copyright holder with no defense against predictable damage. Nor is it necessary to show with certainty that future harm will result. What is necessary is a showing by a preponderance of the evidence that *some* meaningful likelihood of future harm exists." 464 U.S. at 451.

LifeWise has alleged, and Parrish has accepted as true for purposes of his fair-use defense, that "it is highly likely that some local programs will download free versions of the LifeWise Curriculum" from Parrish's Website. Compl. ¶50; *see* Def. Mot. at 9. Here, the posted, available-for-free version of LifeWise's Curriculum is not only a "substitute" for the Curriculum itself—it *is* the Curriculum. *Ty*, 292 F.3d at 517. The substitute and the original are identical. So, Parrish is "cutting into the publisher's market, and the defense of fair use [] fail[s]." *Id*. The available-for-free Curriculum can be used for any purpose. Parrish may want others to criticize it, but that does not prevent

any Internet user who finds the Curriculum through a Google search from using the free version instead of paying LifeWise to obtain an authorized copy of the Curriculum.

As the Seventh Circuit has concluded, "the harmful effect of Internet piracy on the potential market for the copyrighted work[] … is fairly obvious." *Slater*, 348 F.3d at 669 (citing *In re Aimster Copyright* Litigation, 334 F.3d 643 (7th Cir. 2003)). "Copyright law lets authors make their own decisions about how best to promote their works; copiers … cannot ask courts (and juries) to second-guess the market and call wholesale copying 'fair use' …." *BMG Music*, 430 F.3d at 891.

### E. Equitably balancing the factors weighs heavily against Parrish's fair-use theory.

As discussed above, all four statutory factors weigh strongly against Parrish's far-fetched fair-use theory. And weighing them together makes it even more clear that the Court should protect LifeWise's creative work. "The immediate effect of [the Court's] copyright law is to secure a fair return for an author's creative labor. But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526–27 (1994) (internal quotation marks omitted) (quoting *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975)). Parrish's posting of LifeWise's entire Curriculum does neither. It is highly likely to harm the market for the Curriculum by making it available for free to anyone interested in downloading it—including individuals who find it innocently through Internet searches without knowing that the "free" version has been pirated. Fair use does not countenance Internet piracy. *See Slater*, 348 F.3d at 669 ("Even if [the defendant] could show some noncommercial educational purpose, consideration of other factors weighs decisively against application of the fair use doctrine to Internet piracy.").

## CONCLUSION

The Court should grant LifeWise's motion for summary judgment.

September 16, 2024

                                                   Respectfully submitted,

*/s/ James S. Kresge*
James S. Kresge (admitted *pro hac vice*)
Joseph P. Ashbrook (31682-15)
Andrew D. McCartney
(*pro hac vice* application forthcoming)
Ashbrook Byrne Kresge LLC
PO Box 8248
Cincinnati, Ohio 45249
Tel: (513) 201-5775
Fax: (513) 216-9882
jpashbrook@ashbrookbk.com
jskresge@ashbrookbk.com
admccartney@ashbrookbk.com

14

## CERTIFICATE OF SERVICE

 I certify that, on September 16, 2024, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which shall provide notification by email of such filing to all counsel of record.

/s/ James S. Kresge