IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| LIFEWISE, INC.<br><br>        Plaintiff,<br><br>   v.<br><br>ZACHARY PARRISH<br><br>        Defendant. | Case No.: 1:24-cv-00268-HAB- SLC<br><br>Chief Judge Holly A. Brady<br><br>Magistrate Judge Susan L. Collins |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.   LIFEWISE MAY NOT UNILATERALLY CONVERT MR. PARRISH'S MOTION INTO A MOTION FOR SUMMARY JUDGEMENT NOR INTRODUCE NEW FACTS AND ALLEGATIONS ......................................................2

II.  POSTING THE CURRICULUM ON A WEBSITE DEVOTED TO CRITICIZING IT IS A CLEAR FAIR USE...................................................................4

   A.   Mr. Parrish's Use Is Noncommercial and Serves the Core Fair Use Purpose of Facilitating Criticism and Commentary on a Matter of Public Interest. ...................................................................................................5

      1.   Mr. Parrish's Use Is Noncommercial.............................................................5

      2.   Mr. Parrish's Purpose Is Critical, Educational, and Distinct. .......................5

      3.   Transformativeness Turns on Whether the Use Serves a New and Distinct Purpose, Not Whether It Alters the Original Work. .................7

      4.   Allegations of bad faith do not assist the analysis ........................................8

   B.   The Second Fair Use Factor Has Little Impact Here. ............................................10

   C.   Mr. Parrish Was Justified In Posting the Entire Curriculum. .................................10

   D.   Factor Four Favors Fair Use ...................................................................................11

CONCLUSION..................................................................................................................15

**INTRODUCTION**

Plaintiff LifeWise Inc., ("LifeWise") seeks to rewrite its own allegations and use them, along with newly created "facts," to suggest that Mr. Parrish is some sort of "Internet pirate" who will compete in the market for Bible study materials. Stripped of this hyperbole, the actual allegations at issue, including all plausible inferences, tell another story: that Mr. Parrish is just a passionate parent who wants to help other parents understand what "traditional, character-based Biblical teaching during school hours" entails. LifeWise insists that a "comprehensive summary" (or a sharply restricted access to the whole, which it created only after the Complaint was filed and which it can withdraw at any time) will suffice. The implication of that contention is clear: LifeWise wishes to use copyright law to control parental and public oversight of its program.

This case demonstrates one of the fundamental purposes of fair use: to ensure that copyright does not inhibit robust criticism of and commentary on copyrighted works, particularly when they pertain to matters of public interest. Not coincidentally, LifeWise's hyperbole belies the weakness of its case: Posting a controversial educational curriculum on a specific website is nothing like uploading entire Hollywood movies, LifeWise Brief in Response, ECF No. 23 ("LifeWise Br."), at 1; file-sharing popular music, *Id.* at 14; or copying software to undercut a competitor, *Id.* at 7. It is much more like posting an archive of emails to help voters understand potential flaws in voting machines, or technical standards that have been incorporated into law to help citizen understand their legal obligations, or student papers to help educators detect plagiarism. The fair use doctrine protected all of these uses, and it protects Mr. Parrish's use as well.

I.  **LIFEWISE MAY NOT UNILATERALLY CONVERT MR. PARRISH'S MOTION INTO A MOTION FOR SUMMARY JUDGEMENT NOR INTRODUCE NEW FACTS AND ALLEGATIONS**

LifeWise devotes a significant portion of its brief to arguing that Mr. Parrish's Motion is actually a motion for summary judgment. The distinction is immaterial. Mr. Parrish's Motion is exclusively based on the allegations of the Complaint and two undisputedly authentic archival copies of the Parents Against LifeWise Website as it appeared when Mr. Parrish posted the Curriculum. LifeWise does not contest that the Website is incorporated by reference into the Complaint, dispute the authenticity of the archived pages, nor does it object to judicial notice of their contents.[1]

Binding precedent forecloses LifeWise's effort to create a mountain out of a molehill. Dismissal is proper here even if the Motion is miscaptioned, because any captioning error is "harmless," and "all the facts necessary to rule on the affirmative defense are properly before the court." *United States v. Rogers Cartage Co.*, 794 F.3d 854, 861 (7th Cir. 2015). As LifeWise itself concedes, the Court would employ "essentially identical…procedure" whether it adjudicates the Motion under Rule 12(b)(6), or opts to convert it into a motion for summary judgment. LifeWise Br. 3 (quoting *Brownmark Films*, 682 F.3d at 691). The Court may choose to treat Mr. Parrish's Motion as a motion for summary judgment, but it is not required to do so. *See, e.g., Est. of Conner by Conner v. Ambrose*, 990 F. Supp. 606, 619 (N.D. Ind. 1997) ("The court has complete discretion in determining whether a motion to dismiss should be converted

---

[1] LifeWise noted that it "does not object" to Mr. Parrish's request that the Court take judicial notice of these two webpages, which are attached as Exhibits A and B to Mr. Parrish's Request for Judicial Notice, ECF Nos. 14-1, 14-2 ("Exs. A–B"), "[i]f the Court treats Parrish's motion as a motion for summary judgment." LifeWise Br. at 4 n.1, 10 n.2.

2

into a motion for summary judgment."); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366 (3d ed. June 2024 update) (same; collecting cases).

When faced with motions to dismiss with attachments that were incorporated by reference in the complaint, some courts decide to convert the motion, while others do not. *Compare Gary/Chicago Int'l Airport Auth. V. Zaleski*, 144 F. Supp. 3d 1019, 1024 (N.D. Ind. 2015) (declining to convert motion because document attached to motion was central to and incorporated in the complaint); *Drebing v. Provo Grp., Inc.*, 494 F. Supp. 2d 910, 912 (N.D. Ill. 2007) (same); *with Brownmark*, 682 F.3d at 691 (converting motion to dismiss to avoid deciding issue of first impression).

LifeWise may hope to use its procedural claims to spur the Court to consider evidence it created *after* filing the Complaint: a "LifeWise Curriculum review webpage" that purportedly allows parents to review the entire Curriculum, subject to limitations discussed below. This webpage did not exist when Mr. Parrish posted the Curriculum—nor even when LifeWise filed the Complaint.[2] Accordingly, unlike the parentsagainstlifewise.online website, it was not (and could not have been) incorporated by reference into the Complaint.

Nor should the Court take judicial notice of the new page. First, it contradicts the Complaint, which alleges that LifeWise has agreed not to make the Curriculum available outside of "a classroom setting." Compl. ¶ 26. Second, it comes from a dynamic website, the content of

---

[2] The Wayback Machine, an archive of webpages created by the Internet Archive, a non-profit digital library, captured and archived the LifeWise website periodically. On July 8, 2024, six days after LifeWise filed its Complaint, the "Inside the LifeWise Curriculum" page on the LifeWise website did not include a link to request review of the full curriculum. *See* Exhibit 1, Second Request for Judicial Notice in Support of Defendant Parrish's Motion to Dismiss ("Second RJN"). On or before July 30, 2024, LifeWise added a "Request Full Curriculum Review" link. *See* Exhibit 2, Second RJN. Mr. Parrish requests judicial notice of these pages for the limited purpose of opposing LifeWise's request for judicial notice of its newly added curriculum request page. *See* LifeWise Br. 10.

3

which can be changed at any time—as LifeWise in fact did. *See Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995) ("In order for a fact to be judicially noticed, indisputability is a prerequisite."); *Gaul v. SignalHire LLC*, No. 23-CV-1301-JES, 2024 WL 3652876, at *1 n.2 (C.D. Ill. Aug. 5, 2024) ("[I]t is completely unclear as to how a currently active hyperlink indisputably represents the state of [the party's] website at the time of any alleged prior violations…and so the Court refrains from considering them at this juncture."). Dynamic webpages that "may have been modified" by a party are not properly subject to judicial notice, because the current version of the webpage may not "accurately present" the content of the site as it appeared in the past, at a time relevant to the claim. *Hartman v. Meta Platforms, Inc.*, No. 3:23-CV-02995-NJR, 2024 WL 4213302, at *7 (S.D. Ill. Sept. 17, 2024); *see also Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) (the "reliability, permanence, and accessibility" of websites affects whether judicial notice is appropriate).

More generally, LifeWise should not be permitted to rely on new facts or evidence to withstand a motion to dismiss, whether or not it is converted to summary judgment. *See, e.g., Doss v. Peachy,* No. 14-CV-1100-PP, 2015 WL 5839184, at *6 (E.D. Wis. Oct. 7, 2015) (holding that plaintiff could not withstand dismissal by attempting to present a document it created after filing its lawsuit).

**II.     POSTING THE CURRICULUM ON A WEBSITE DEVOTED TO CRITICIZING IT IS A CLEAR FAIR USE.**

LifeWise's own allegations doom its case, and its Response cannot save it. The fair use analysis rests on the Court's assessment of four enumerated factors, considered in light of the purposes of copyright. When applied to a critic's decision to post an educational curriculum, solely in order to galvanize public opposition to its use, all four factors strongly favor fair use.

4

A.  **Mr. Parrish's Use Is Noncommercial and Serves the Core Fair Use Purpose of Facilitating Criticism and Commentary on a Matter of Public Interest.**

1.  **Mr. Parrish's Use Is Noncommercial.**

LifeWise concedes that Mr. Parrish's purpose in posting the Curriculum—to "galvanize parents to oppose local LifeWise Academy chapters in their communities," Compl. ¶ 31—is noncommercial.

"[T]here is no doubt that a finding that copying was not commercial in nature tips the scales in favor of fair use." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021). In *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262 (D.C. Cir. 2023) ("*ASTM II*"), for example, a nonprofit organization posted on its website entire technical standards that had been incorporated by reference into law, in order to facilitate public understanding of those laws. *Id.* at 1269. That use was found to be fair, in part because it was entirely noncommercial. *Id.* at 1267. The same holds true here.

2.  **Mr. Parrish's Purpose Is Critical, Educational, and Distinct.**

LifeWise's principal contention—that Mr. Parrish's use is not "criticism"—contradicts its own allegations. LifeWise Br. 4–5. The Complaint states that Mr. Parrish's purpose is to criticize the LifeWise curriculum and to inform parents and school administrators of its content. Cmplt. ¶ 31. LifeWise cannot claim otherwise now.

In addition to the Complaint itself, that purpose is clear from the "Parents Against LifeWise" website it incorporates by reference. Cmplt. ¶¶ 7, 8, 21, 29, 32, 33, 35, 36, 38, 39, 41, 44, 45. The website builds a comprehensive case against the program. Among other arguments, the website points out the discrepancy between LifeWise's public claim to provide "non-denominational, character-based bible education" and the actual content of its lessons, which are sourced from a particular denomination (the Southern Baptist Convention). *See* Exhibit B,

5

Defendant Parrish's Request for Judicial Notice (ECF Nos. 13, 13-2). The website argues that LifeWise's goal is not merely "character-based" education, but rather to proselytize students to adopt a particular system of belief. *Id.*

In its discussion of Factor 3, LifeWise claims to fulfill the same informational need by making "a read-only version" of the curriculum narrowly available to people who submit a "curriculum review form." LifeWise Br. 10 & n.2. As discussed above, this claim is based on webpages that LifeWise added after filing its complaint, which are neither incorporated in the Complaint nor proper subjects of judicial notice.

In any event, this new "evidence" does little to tilt Factor One against fair use. First, it amounts to a concession that the "Comprehensive Summary" referenced in the Complaint is not adequate. Second, LifeWise *continues* to limit access to the curriculum in ways that impair public debate. For example, LifeWise claims to allow members of the public to review the curriculum for 48 hours but not to "copy, print, download, screenshot, share, or distribute" it. LifeWise Br. at 10. These limitations make it nearly impossible to read and comprehend a lengthy curriculum covering kindergarten through 5th grade and to discuss excerpts of that curriculum with other concerned parents. In addition, the newly added "curriculum review form" requires parents to provide their name, address, and email to LifeWise, along with an explanation of why they want to review the curriculum. *See* https://lifewise.tfaforms.net/4972189 (cited at Lifewise Br. 10 & n.2). Many parents, especially those with concerns about the program, will understandably hesitate to provide their contact information to LifeWise. Finally, LifeWise may revoke access at any time, and is likely to do so given that it is allegedly required to limit access to "within a classroom setting with student learners," Cmplt. ¶ 26, and that the Curriculum is "solely for use by local LifeWise Academy chapter programs." Cmplt. ¶ 27.

Relatedly, courts are more solicitous toward uses that "benefit[] the broader public interest." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994); *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006); *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523 (9th Cir. 1992); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1267 (11th Cir. 2014). That benefit is abundantly clear here. Mr. Parrish's posting facilitates informed public debate about the issue of "released time religious instruction" of public school students, and the broader question of the proper role of religion in public schools. According to the Complaint, at least 2,500 parents are concerned about LifeWise's work specifically, Cmplt. 29, and the general issue has led to multiple legal challenges. *See, e.g., Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187–88 (4th Cir. 2018) (legal challenge to Bible classes taught in public school, alleging school pressure to participate); *Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 601 (4th Cir. 2012) (similar). Ensuring that copyright does not inhibit public discussion is a core purpose of fair use. 17 U.S.C §107 ("the fair use of a copyrighted work . . . for purposes such as criticism, comment. . . or research, is not an infringement of copyright"); *see Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1203 (N.D. Cal. 2004) (finding fair use of internal corporate communications about election integrity because, in part, "[i]t is hard to imagine a subject the discussion of which could be more in the public interest.").

By allowing concerned parents to read the curriculum with context, while maintaining their privacy, and with full ability to share and discuss excerpts from it, Mr. Parrish serves a purpose that LifeWise emphatically does not.

### 3. Transformativeness Turns on Whether the Use Serves a New and Distinct Purpose, Not Whether It Alters the Original Work.

LifeWise's contention that fair use requires a substantial change to the copyrighted work itself, LifeWise Br. 6, runs contrary to decades of fair use jurisprudence. As explained in Mr.

7

Parrish's opening brief, the Factor One analysis asks instead whether the use serves a new and distinct purpose, and that criterion can be met in multiple ways regardless of whether the work is substantially altered or a derivative work created. Opening Br., ECF No. 13, at 4–5; *see also A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009) ("The use of a copyrighted work … can be transformative in function or purpose without altering or actually adding to the original work.").

Accordingly, full verbatim copying is often found to be transformative, including the act of posting such copies online. *See, e.g., Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 454–55 (1984) (copying entire television programs for time-shifted viewing); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015) (copying entire books to enable searching); *Vanderhye*, 562 F.3d at 639–40 (copying entire student papers to detect plagiarism); *ASTM II*, 82 F.4th at 1268 (posting complete copies of standards online was fair use even though defendant "does not alter or add to the standards").[3]

### 4. Allegations of bad faith do not assist the analysis

LifeWise leans heavily on its claim that Mr. Parrish acted in bad faith by "submitting a fraudulent volunteer application." Cmplt. ¶31; LifeWise Br. 7–8. On this theory, many investigative reporters also act in bad faith when they use standard investigative techniques, such as joining a factory workforce in order to gain information about factory conditions that is not otherwise available. LifeWise admits that it only provided a summary of its Curriculum to

---

[3] The Supreme Court's 2023 decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 did not address verbatim copying, and did not hold that such copying is excluded from fair use. Rather, the Court analyzed the physical transformation of a work (in that case, a silkscreen portrait derived from a photograph) as a non-exclusive example of secondary uses that may be transformative. *Id.* at 516–22, 527–32. Following *Warhol*, courts have continued to find that verbatim copying can be fair use. *See, e.g., ASTM II*, 82 F.4th at 1267–68 (citing *Warhol*, 143 S. Ct. at 1275).

8

outsiders, including parents. Cmplt. ¶ 46. Having forced Mr. Parrish to engage in mild deception to obtain the document, it cannot now use that situation to counter Mr. Parrish's claim of fair use.

It is true that while the Supreme Court is openly skeptical of the relevance of bad faith to the fair use inquiry, it has declined to expressly reject it. *Google*, 593 U.S. at 32 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994)). But it is surely telling that its most recent fair use opinion, which was entirely devoted to Factor One, *ignores bad faith altogether.* *Warhol*, 598 U.S. 508. The signal is clear: "Copyright is not a privilege reserved for the well-behaved." Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1126 (1990).

*Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832 (Fed. Cir. 1992) and its progeny are unpersuasive on this point. LifeWise Br. 7–8 (citing cases). First, *Atari* predates the guidance offered in *Campbell* and *Google*—the latter by almost two decades. Second, the facts could hardly be more different: Two of the cited cases involve cut-throat software industry competitors, not a Bible study program and its critic. *Id.* at 836-37; *DSC Corp v. DGI Techs, Inc.,* 898 F. Supp. 1183, 1192-93 (N.D. Tex 1995). In the last, a pro se Canadian defendant had posted clips of videos of internal company activities, such as speeches and a team-building exercise. *TELUS Corp. v Watson*, 2009 WL 10703326, at *6 (N.D. Cal. Nov. 13, 2009). These inapposite cases do not justify a reviving an outdated view of fair use.

Finally, to the extent the concept has any enduring force in the Factor One fair use analysis, "bad faith" must closely relate to the *actual purpose* of the use. In *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 US 541 (1985) for example, the Court found that *The Nation*'s unauthorized use of the original work (an excerpt from an unpublished manuscript of President Ford's memoirs that discussed his decision to pardon former President Nixon) "had not merely the incidental effect but the *intended purpose* of supplanting the copyright holder's

9

commercially valuable right of first publication." *Id.* at 562. Here, LifeWise admits that Mr. Parrish's purpose was to facilitate criticism and comment in order to galvanize opposition to use of the Curriculum. Cmplt. ¶ 31.

### B. The Second Fair Use Factor Has Little Impact Here.

The second fair use factor—the "nature of the copyrighted work"—considers whether a work is more or less creative, and whether it has been published. *See Bell v. Milwaukee*, No. 22-C-0227, 2022 WL 18276966, at *5 (E.D. Wis. Dec. 21, 2022). LifeWise does not dispute that the Curriculum is a published work. And while Mr. Parrish does not dispute that the Curriculum contains some creative elements, they have no meaningful impact on the fair use analysis. *See Fox News Network, LLC v. TVeyes, Inc.*, 883 F.3d 169, 178 (2d Cir. 2018) (where use was even "modest[ly] transformative," second factor "plays no significant role").

What is important here is that Mr. Parrish's use of the work is not related to its mode of expression, because neither Mr. Parrish nor his audience of concerned parents seek to benefit from any creative aspects of the curriculum. *See e.g. American Institute of Physics v. Winstead PC*, No. 3:12–CV–1230, 2013 WL 6242843, at *5 (N.D. Tex. Dec. 3, 2013) (where a document is used for an evidentiary purpose, its expressive content is "merely incidental"); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 610, 612 (2d Cir. 2006) (where artwork is reproduced as "historical artifacts," its creative content "has limited weight"). As these cases demonstrate, LifeWise's argument that any copying of creative expression weighs against fair use as a matter of law is incorrect.[4]

### C. Mr. Parrish Was Justified In Posting the Entire Curriculum.

---

[4] On the contrary, fair use exists to protect the re-use of creative expression. One who copies no creative expression need not rely on fair use at all, because there is no *prima facie* case of infringement. *See Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005).

It was reasonable for Mr. Parrish to post the entire curriculum as evidence to explain why parents should oppose it. A summary, whether drafted by LifeWise or by Mr. Parrish himself, would not be adequate. The former is likely to be biased, and the latter would leave Mr. Parrish open to claims of cherry-picking or hyperbole. More generally, a parent seeking to understand what their child is being taught must be able to consider individual lessons in their full context. This reasonable necessity is all that the third fair use factor requires, particularly where the use is intended to support critique. *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 629 (7th Cir. 2003) ("[R]oom must be allowed for judgment, and judges must not police criticism with a heavy hand.").

Nor can LifeWise support its suggestion that fair use does not shelter copying of entire *commercial* works. LifeWise Br. 11–12. In fact, courts have regularly held that the commerciality of the original work did not tilt the Factor Three analysis against fair use. *See e.g., ASTM II*, 82 F.4th at 1267, 1269 (copying and posting commercially marketed technical standards that were incorporated into law); *Katz v. Google Inc.*, 802 F.3d 1178, 1182–84 (11th Cir. 2015) (copying and posting photograph to criticize the person depicted).

*Chicago Board. of Education* is easily distinguishable on this point. In that case, the defendant presented no facts to explain why the amount he copied was reasonably necessary other than that "he thought [it] bad." *See* 354 F.3d at 627, 629. LifeWise's own allegations assert that Mr. Parrish, in contrast, posted the entire curriculum as evidence to support his campaign to convince parents to oppose its use. Cmplt. ¶ 31.

D. **Factor Four Favors Fair Use**

LifeWise's allegations of market harm boil down to four premises: (1) Mr. Parrish failed to pay a licensing fee himself, Cmplt. ¶ 47; (2) Mr. Parrish's posting is "directly competitive" because it allows visitors to obtain the curriculum for free, *id.* ¶ 49; (3) it is "highly likely" that

11

"local programs" will download the program rather than paying a fee to access them *id.* ¶¶ 28, 50; and (4) Mr. Parrish has "misappropriated" LifeWise's "investment of time and money" in creating the Curriculum, *id.* ¶ 51.

None of these holds up to even minimal scrutiny. As to the first, courts have correctly rejected claims of market harm based on lost licensing fees for the very use at bar, recognizing its circular reasoning: "[I]f the use is a fair use, then the copyright owner is not entitled to charge for the use, and there is no 'customary price' to be paid in the first place." *Patton*, 769 F.3d at 1265. Indeed, accepting that harm would mean that "the fourth fair use factor would *always* favor the copyright holder." *Bill Graham*, 448 F.3d at 614 (quotation omitted).

The second and third premises are equally specious. LifeWise itself concedes that Mr. Parrish does not seek to compete with LifeWise; he is a critic who is concerned that the Curriculum is being taught to public school students at all. And contrary to LifeWise's repeated suggestion, Mr. Parrish did not "dump[ ] the Curriculum onto the Internet" LifeWise Br. 1, 4, 5, 8–11, 13. He posted it on a specific site, to galvanize opposition to its use. An unwitting visitor who finds the curriculum on the Parents Against LifeWise site "innocently through Internet searches," *id.* 14, would be presented with the case *against* the Curriculum from the moment they saw the name of the website.

Nor is it "highly likely" that local chapters will download the Curriculum from the website. *Id.* Even assuming they are not deterred by the criticism on the site, as Bible educators it is surely reasonable to infer that such chapters would not base that education on unlawfully acquired materials. They, like Mr. Parrish, are not pirates.

Finally, as explained in Mr. Parrish's Opening Brief, copyright is not concerned with a party's investment of "time and money," but rather the creative expression that does (or does

12

not) result. Opening Br. 9; *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359–60 (1991).

The cases upon which LifeWise relies to persuade the Court to accept that actual or potential effects on the market are nonetheless "fairly obvious" are inapposite. Most of the quoted language states the undisputed proposition that copyright is intended to incentivize and reward creativity. LifeWise. Br 1, 12–14. Other cases concern dramatically different facts. *United States v. Slater*, 348 F.3d 666 (7th Cir. 2003)*,* for example, concerned the criminal prosecution of a group "dedicated to the unauthorized dissemination of copyrighted software over the Internet." *Id.* at 667. *Chicago Board of Education* concerned the publication of standardized tests, a use that, due to the nature of the works, necessarily destroyed their value. 354 F.3d at 630.

As for *Sony*, the possibility this particular use could became widespread does not help LifeWise's case: Copyright holders can claim lost licensing fees as a market harm only if there is a "traditional, reasonable, or likely to be developed market[ ]" for the use. *Texaco*, 60 F.3d at 930. There is no market for the noncommercial sharing of the Curriculum in order to "galvanize" opposition to that very Curriculum, Cmplt. ¶ 31, whether a single parent does it or many. If the Curriculum is copied by others for commercial purposes, that may be another matter. But that hypothetical use does not weigh against a finding of fair use here; fair use must be analyzed separately for each "specific use." *Warhol*, 598 U.S. at 533 (quotation omitted).

If anything, *Sony supports* a finding of fair use here, because it expressly rebuffs the notion that courts may presume market harm where the use is noncommercial. 464 U.S. at 451. Given that Mr. Parrish's use is indisputably noncommercial, this Court need not accept a vague

13

claim that the harm is "fairly obvious;" LifeWise must allege enough to plausibly infer it. It has not.

And while the Second Circuit erroneously accepted plaintiff copyright-holders' "common-sense" theory of harm in *Hachette Book Grp., Inc. v. Internet Archive,* No. 23-1260, 2024 WL 4031751, at *17 (2d Cir. Sept. 4, 2024) (quotation omitted), the D.C. Circuit has rejected it, adhering to both *Sony* and *Google*. *Compare ASTM II,* 82 F.4th at 1271 (rejecting claim of market harm based on "a common-sense inference: If users can download an identical copy of [a work], few will pay to buy [it]"); *see generally* Patry on Fair Use, §§ 6-7 (2024). "The crux of the profit/nonprofit distinction is . . . whether the user stands to profit from exploitation of the copyrighted material without paying the customary price," *Harper & Row*, 471 U.S. at 562. There is nothing in the Complaint or related documents to suggest that Mr. Parrish stands to profit from reproduction of the Curriculum.

Finally, LifeWise's has no meaningful response to the Supreme Court's admonition in *Google*, that the analysis must "take into account the public benefits the copying will likely produce . . . Are they comparatively important, or unimportant, when compared with dollar amounts likely lost." 593 U.S. at 35–36. Here, those benefits are both obvious and important. *Supra* at II.A.2-3. On the other side of the scale, courts weigh the effect on the incentive to produce future works, because "[c]opyright should not grant anyone more economic power than is necessary to achieve the incentive to create." *Google*, 593 U.S. at 21 (quotation omitted). Given that LifeWise's allegations of harm are based primarily on pure speculation that local chapters will rely on a critical website to obtain materials they would otherwise have to license, it is not plausible to infer that any such incentives are needed.

14

## CONCLUSION

This lawsuit is a transparent attempt to punish a critic. Mr. Parrish is not a pirate, much less a competitor. He is a concerned parent who opposes LifeWise's mission and believes other parents should as well. Taking LifeWise's allegations as true, as well as plausible inferences, it is clear that Mr. Parrish's posting of the Curriculum was a noninfringing fair use.

For the foregoing reasons, Defendant respectfully requests the Court dismiss the Complaint with prejudice.

Dated: September 23, 2024                    Respectfully submitted,


                                             *s/ Corynne McSherry*

                                             Corynne McSherry (*admitted pro hac vice*)
                                             Mitchell L. Stoltz (*admitted pro hac vice*)
                                             Victoria J. Noble (*admitted pro hac vice*)
                                             ELECTRONIC FRONTIER FOUNDATION
                                             815 Eddy Street
                                             San Francisco, CA 94109
                                             Telephone: (415) 436-9333
                                             Facsimile: (415) 436-9993

                                             William A. Ramsey, #26547-53
                                             BARRETT MCNAGNY LLP
                                             215 E. Berry Street
                                             Fort Wayne, IN 46802
                                             Telephone: (260) 423-9551
                                             Fax: (260) 423-8920
                                             Email: war@barrettlaw.com

                                             *Attorneys for Defendant Zachary Parrish*

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 23rd day of September, 2024, I caused the foregoing to be filed electronically with the Clerk of Court using the CM/ECF system, which shall provide notification by email of such filing to all counsel of record.

            _s/ Corynne McSherry_
            Corynne McSherry