**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION**

LIFEWISE, INC.

           Plaintiff,

    v.

ZACHARY PARRISH

           Defendant.

Case No.: 1:24-cv-00268-HAB-SLC

Chief Judge Holly A. Brady

Magistrate Judge Susan L. Collins

**DEFENDANT ZACHARY PARRISH'S OPPOSITION
TO MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Having filed this copyright lawsuit to shut down a critical fair use, LifeWise is now faced with the challenge of supporting its spurious infringement claim. It has not met that challenge. Instead, it has moved for summary judgment based on a slapdash set of unsupported "facts," attorney argument, and inapposite case law.

LifeWise is right about one thing: if the Court denies Mr. Parrish's motion to dismiss, the case can and should be resolved on summary judgment. But the Court should grant that judgment in favor of Mr. Parrish. The actual undisputed facts, including LifeWise's own admissions, show that Mr. Parrish's use of the curriculum was a lawful, noncommercial effort to facilitate and engage in fully informed debate about an important public issue. He published precisely what was necessary to support that purpose: the full curriculum rather than potentially misleading selections. That posting did not and could not harm any reasonably likely licensing market because, as LifeWise admits, no such market exists.

The Court should end LifeWise's transparent effort to punish a critic now.

**ARGUMENT**

**I.    LIFEWISE'S MOTION FAILS BECAUSE IT IS NOT SUPPORTED BY ADMISSIBLE EVIDENCE.**

The Court should deny LifeWise's Motion for a simple threshold reason: LifeWise offers no admissible support for most of the facts it claims are undisputed. LifeWise cites only to the allegations of its own Complaint, a legal brief Mr. Parrish filed in support of his motion to dismiss, and a legal case on the constitutionality of LifeWise's activities, which is not at issue here.

That is not adequate. A party moving for summary judgment has the burden to show that there is no genuine dispute as to any issue of material fact. Fed. R. Civ. P. 56(a). That showing must be supported by "particular parts of materials in the record," Fed. R. Civ. P. 56(c)(1)(A), that could "be presented in a form that would be admissible in evidence" at trial. Fed. R. Civ. P.

56(c)(2). Under this Court's local rules, the citation should include "a page or paragraph number to evidence in the record which can be presented in an admissible form unless the court may take judicial notice of the fact." N.D. Ind. L. R. 56-1(e).

LifeWise's flimsy "statement of material facts" falls far short of this standard.

### A.    LifeWise Cannot Rely on its Own Complaint to Support Summary Judgment in its Favor.

LifeWise confuses allegations with admissible evidence, relying heavily on its own Complaint to support the facts it claims are undisputed.[1] Plaintiff Lifewise's Statement of Material Facts, ECF No. 26 ("LifeWise SMF"). But a plaintiff's "[a]llegations in a complaint are not evidence." *Nisenbaum v. Milwaukee Cnty.*, 333 F.3d 804, 810 (7th Cir. 2003); *see also Allied Ins. Co. v. United States*, 627 F. Supp. 3d 944, 954 (N.D. Ill. 2022) ("[c]itations to the operative complaint do not satisfy Plaintiffs' obligation…to support each factual assertion with evidence from the record."); *Laney v. Bowles*, No. 2:11-CV-318, 2014 WL 2468616 at *4 (N.D. Ind. 2014) ("mere allegations in a complaint and unsupported assertions in a response brief need not be considered by the Court as evidence at the summary judgment stage").

Accordingly, LifeWise has failed to support Fact 2 at all, *see* LifeWise SMF ¶ 2 (citing only "Compl. ¶3."). And it has substantially failed to support the rest, given that most of the purported "evidence" cites only the Complaint. *See generally* LifeWise SMF. All of the other citations are preceded by the signals "see," "see generally," or "cf." *Id.* at ¶¶ 1, 6, 7, 9 (citing all evidence other than the Complaint with the signal "*see*"), 3 (citing all evidence other than the Complaint with the signal "*see generally*"), 4, 5, 8 (citing all evidence other than the Complaint with the signal "*cf*"). These vague references do not identify actual evidence in support of the

---

[1] While LifeWise cannot rely on its own pleadings on summary judgment, they constitute judicial admissions and are "binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995); *see also Aaron MacGregor & Assocs., LLC v. Zhejiang Jinfei Kaida Wheels Co.*, 328 F. Supp. 3d 906, 928 (N.D. Ind. 2018) ("concessions in [plaintiff's] pleadings constitute judicial admissions and are therefore binding on [plaintiff] unless the Court would allow them to be withdrawn").

purported facts for which they are cited, much less establish that those facts are undisputed or material.

**B.** **Mr. Parrish's Brief in Support of His Motion to Dismiss Does Not Support LifeWise's Purported Pacts.**

The only other "evidence" LifeWise offers is Mr. Parrish's brief in support of his motion to dismiss. LifeWise SMF ¶¶ 1, 3-9. Here, too, LifeWise has failed to meet the standard for evidence on summary judgment.

*First*, LifeWise cites Mr. Parrish's brief in support of Fact 3, but does not "include a page or paragraph number" that specifies where the cited material can be found, as required by N.D. Ind. L. R. 56-1(e). *See* LifeWise SMF ¶ 3 ("*see generally* Def. Mot."); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). ("[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes.").

*Second*, LifeWise repeatedly relies on Mr. Parrish's brief to support more than it can bear. Specifically:

- Fact 1 quotes to a statement in Mr. Parrish's brief that "LifeWise is a private organization that markets religious instruction for public school students." LifeWise SMF ¶1 (quoting ECF No. 13 at 1). Defendant does not dispute that "LifeWise is a private organization that markets religious instruction for public school students." But the preceding statement offers no support for the remaining assertions in Paragraph 1, *i.e.* that LifeWise offers "**traditional, character-based, Biblical teaching during school hours**; that it "**provides the religious instruction only to families that want it;**" or that "**it does so off school property.**" LifeWise SMF ¶ 1 (emphasis added).

- Fact 4 quotes to the statement in Mr. Parrish's brief that "**Even if** the Court accepts that LifeWise lost out on the licensing fees Mr. Parrish would otherwise have had to pay, that should not change the analysis." LifeWise SMF ¶ 4 (quoting ECF No. 13 at 8) (emphasis added). That legal argument expressly assumes this proposition only for the

sake of argument; it is not an admission. Even if it is regarded as an admission attributable to Mr. Parrish, it is not probative evidence that "**Local LifeWise Academy chapter programs must pay a fee to access the LifeWise Curriculum**." *Id.*

- Fact 5 quotes a statement in Mr. Parrish's brief that "[Parrish] acquired and shared the LifeWise elementary school curriculum on a critical website and a Facebook group, both called 'Parents Against Lifewise.'" LifeWise SMF ¶ 5 (quoting ECF No. 13 at 1). That statement, however, is not probative evidence that "Defendant Mr. Zachary Parrish **posed as a LifeWise volunteer to gain access to internal LifeWise documents**, including its Curriculum." *Id.*

- Fact 6 quotes a statement in Mr. Parrish's brief that "[Parrish] posted the entire curriculum." LifeWise SMF ¶ 6 (quoting ECF No. 13 at 2). That statement, however, is not probative evidence that "Parrish published **internal LifeWise documents and** the entire **copyrighted** Curriculum on his website." *Id.*

- Fact 7 quotes the following statement in Mr. Parrish's brief: "Even taking this alleged harm at face value…." LifeWise SMF ¶ 7 (quoting ECF No. 13 at 9) (modification in original). That statement, however, is not probative of any fact at all, let alone whether "[i]t is '**highly likely that some local programs will download free versions of the LifeWise Curriculum' from Parrish's Website.**" *Id.* Moreover, the statement is not an admission that any harm in fact occurred; it is a legal argument that even *if* the harm occurred, Mr. Parrish still prevails.

- Fact 9 cites generally to "Def. Mot. At 1-2" to support the proposition that "LifeWise was forced to bring this lawsuit to remedy Parrish's intentional copyright infringement, which Parrish maintains is fair use." LifeWise SMF ¶ 9. To the extent that citation is intended to support the proposition that Mr. Parrish maintains his use was fair use, that is undisputed. But to the extent it is intended to support the proposition that "**LifeWise was forced to bring this lawsuit to remedy Parrish's intentional copyright infringement**," it is not remotely probative of that fact. LifeWise SMF ¶ 9.

In short, only Facts 2 and 8 are conceivably supported by any evidence that could be presented in an admissible form at trial. Fed. R. Civ. P. 56(c)(2). And those purported facts, standing alone, cannot show that Plaintiff "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

LifeWise does not support its purported facts with material that could be presented in admissible form. Accordingly, it has failed to comply with Federal Rule of Civil Procedure 56(c) and this Court's Local Rule 56-1(e). Because of this failure, "the court should not have to proceed further" with LifeWise's motion. *Waldridge*, 24 F.3d at 922. Mr. Parrish agrees that this case can, and should, be resolved early. But that resolution should favor Mr. Parrish, not LifeWise.

## II.    GIVEN THE ACTUAL UNDISPUTED FACTS, THE COURT SHOULD GRANT SUMMARY JUDGMENT TO MR. PARRISH.

To prevail on summary judgment, LifeWise must demonstrate that no reasonable jury could find in Mr. Parrish's favor, based on undisputed material facts. Fed. R. Civ. P. 56; *Seshadri v Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997). The Court must view all evidence, and all factual inferences reasonably drawn from the evidence, in the light most favorable to Mr. Parrish. *Tolentino v. Friedman*, 46 F.3d 645, 649 (7th Cir.), *cert. denied*, 515 U.S. 1160 (1995).

LifeWise has not made the necessary showing. While Mr. Parrish bears the burden of proof as to his fair use defense, LifeWise must still show that Mr. Parrish cannot produce admissible evidence to support that defense. Instead, as explained above, LifeWise offers little more than conclusory allegations and unsupported "facts." *Celotex Corp. v. Catrett*, 477 US 317, 325 (1986) (holding that conclusory assertions do not satisfy standard for summary judgment).

Instead, given the *actual* undisputed facts of this case, the Court should grant summary judgment in Mr. Parrish's favor. *Gospel Missions v. City of L.A.*, 328 F.3d 548, 553 (9th Cir. 2003); *NL Indus v. GHR Energy*, 940 F.2d 957, 965 (5th Cir. 1991).

Under Section 107 of the Copyright Act, fair use turns on four factors: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. These factors must be weighed together in light of the purposes of copyright while keeping in mind that the "ultimate test of fair use" is "whether the copyright law's goal of 'promoting the Progress of Science and useful Arts' would be better served by allowing the use than by preventing it." *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) (cleaned up).

> **A.    The Undisputed Facts Demonstrate That Mr. Parrish's Use Is Noncommercial and Serves the Core Fair Use Purpose of Furthering Commentary on a Matter of Public Interest.**

The first fair use factor "focuses on whether an allegedly infringing use has a further purpose or different character" from the original work, including whether it is noncommercial, transformative, or both. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 525-40 (2023). The undisputed facts show that Mr. Parrish's use of the curriculum is noncommercial, with a distinct transformative purpose.

> **1.    Mr. Parrish's Use Is Noncommercial.**

LifeWise itself states that Mr. Parrish's purpose in posting the curriculum was to "galvanize parents to oppose local LifeWise Academy chapters in their communities." Defendant's Response to Plaintiff's Statement of Material Facts ¶ 18, filed herewith ("Parrish RSMF") (citing Cmplt. ¶ 31). This is a self-evidently non-commercial purpose, and LifeWise does not argue otherwise. And it easily " tips the scales in favor of fair use." *Google LLC v. Oracle Am., Inc*., 593 U.S. 1, 32 (2021)  In *American Society for Testing & Materials v. Public.Resource.Org, Inc*., for example, a nonprofit organization posted on its website entire

technical standards that had been incorporated by reference into law, in order to facilitate public understanding of those laws. 82 F.4th 1262, 1269 (D.C. Cir. 2023) ("ASTM II"). That use was found to be fair, in part because it was entirely noncommercial. *Id.* at 1267. The same holds true here.

### 2.    Mr. Parrish's Purpose Is Critical, Educational, and Distinct.

LifeWise's principal contention—that Mr. Parrish's use is not "criticism"—contradicts its own allegations. LifeWise Brief in Support of Motion for Summary Judgment, ECF No. 25, at 4–5 ("LifeWise Br."). LifeWise admits in its Complaint that his "goal was to gather information and internal documents with the hope of publishing information online which might harm LifeWise's reputation and galvanize parents to oppose local LifeWise Academy chapters in their communities." Parrish RSMF ¶ 18 (quoting Cmplt. ¶ 31).

The Parents Against Lifewise website—as it appeared on June 10, 2024, when Mr. Parrish allegedly posted the curriculum, Cmplt. ¶ 35—also illustrates Mr. Parrish's purpose. Parrish RSMF ¶¶ 10–11. The website builds a comprehensive case against the program. Parrish RSMF ¶¶ 10–11, 24–25. Its homepage announces that "[o]ur mission is to protect our children and preserve our public education system by connecting parents and communities across the nation to accurate and transparent information." Parrish RSMF ¶ 11. And "[t]he more we discovered about Lifewise Academy, the more driven we became to educate and warn other parents, schools, and communities." Parrish RSMF ¶ 10.

The website details Mr. Parrish's specific concerns about LifeWise material, such as what he believes to be "hateful" and "discriminatory" teachings. *See* Parrish RSMF ¶¶ 24–25. The site also points out a discrepancy between LifeWise's public claim to provide "non-denominational, character-based bible education" and the actual content of its lessons, which are "based solely on Evangelical beliefs and doctrine" and sourced from a particular denomination (the Southern

Baptist Convention). Parrish RSMF ¶ 21. It argues that LifeWise's goal is not merely "character-based" education, but rather to proselytize "unchurched students in public schools" by "encouraging students to spread the gospel," a goal that, it argues, "inevitably increases bullying" and conflicts with many parents' views on the separation of church and state. *See* Parrish RSMF ¶¶ 21–22.

The LifeWise curriculum, posted to the website, provides evidence for these arguments. The website where the use at issue actually occurred, not Mr. Parrish's "mental state," establishes the purpose and character of the use. *Contra* LifeWise Br. 5.

As the website makes clear, moreover, transparency was a key part of Mr. Parrish's critical and educational purpose. Parents Against LifeWise seeks to protect "parents' right to both provide AND limit what religion or religious teachings their children are being exposed to"—a right that parents cannot exercise without knowing what those religious teachings are. Parrish RSMF ¶ 10.

Mr. Parrish also sought to educate the public about LifeWise's curriculum, furthering an active political debate. LifeWise is already teaching its curriculum to nearly 30,000 public school students from over 300 schools in a dozen states. Parrish RSMF ¶ 12. LifeWise seeks to expand by pursuing legislation that would *require* schools to accommodate LifeWise programming, wresting away schools' and local communities' power to decide this issue for themselves. Parrish RSMF ¶ 13. In a democratic society, it is more than reasonable to educate others about material that schools may soon be *required* to offer students. Indeed, this is a favored purpose under the first fair use factor. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 90 (2d Cir. 2014) (disseminating "entire" work was "reasonable" due to "the public interest in the information embodied" in the work).

LifeWise, by contrast, asserts that it is a Christian ministry that provides religious instruction to public school students via local chapter programs. Parrish RSMF ¶ 12. Its purpose in developing and sharing the curriculum is to offer "traditional, character-based, Biblical teaching during school hours." Parrish RSMF ¶ 14 (quoting Cmplt. ¶ 2). LifeWise is not interested in furthering public debate or educating parents; instead, it tries to limit access to the curriculum to "exclusive use…within a classroom setting with student learners" in "LifeWise Academy chapter programs." LifeWise SMF ¶ 6 (citing Cmplt. ¶¶ 26–27).

Mr. Parrish's purpose – to educate the public and galvanize opposition to the curriculum--could not be more distinct. *Warhol*, 598 U.S. at 527–28; *see also ASTM II*, 82 F.4th at 1268 (first factor favored fair use where defendant's purpose was "very different" from plaintiff's, and "[t]his distinction is fundamental."); *Katz v. Google Inc.,* 802 F.3d 1178, 1182–83 (11th Cir. 2015) ("[Defendant's] use of the Photo was transformative because, in the context of the blog post's surrounding commentary, she used [Plaintiff's] purportedly 'ugly' and 'compromising' appearance to ridicule and satirize his character."); *Swatch Grp.,* 756 F.3d at 85 ("[defendant's] message—'This is what they said'—is a very different message from [plaintiff's]—'This is what you should believe.'").

LifeWise claims to fulfill the public's informational need by making "a read-only version" of the curriculum narrowly available to people who submit a "curriculum review form." LifeWise Br. 10 & n.2. This new assertion does not tilt Factor One against fair use, for at least three reasons. *First*, it contradicts the Complaint, and snapshots of LifeWise's website captured by the Internet Archive show that LifeWise added the "curriculum review form" to its website only after it filed this lawsuit. *Compare id., with* Cmplt. ¶ 46 ("LifeWise provides a comprehensive 27-page summary of the LifeWise curriculum on his website to anyone who

provides their name, email address, and zip code."); Parrish RSMF ¶ 16. *Second*, it amounts to a concession that the "27-page summary" LifeWise claims it used to provide to parents is not adequate. Parrish RSMF ¶ 17 (citing Cmplt. ¶ 46). *Third*, LifeWise *continues* to limit access to the curriculum in ways that impair public debate. For example, LifeWise claims to allow members of the public to review the curriculum for 48 hours but not to "copy, print, download, screenshot, share, or distribute" it. LifeWise Br. 10. These limitations make it nearly impossible to read and comprehend a lengthy curriculum covering kindergarten through fifth grade and to discuss excerpts of that curriculum with other concerned parents. In addition, the newly added "curriculum review form" requires parents to provide their name, address, and email to LifeWise, along with an explanation of why they want to review the curriculum. Parrish RSMF ¶ 16; https://lifewise.tfaforms.net/4972189 (cited at Lifewise Br. 10 & n.2). Many parents, especially those with concerns about the program, will understandably hesitate to provide their contact information to LifeWise.

By allowing concerned parents to read the curriculum with critical context, while maintaining their privacy, and with full ability to share and discuss excerpts from it, Mr. Parrish serves a purpose that LifeWise emphatically does not. This purpose is transformative.

> **3.      Transformativeness Turns on Whether the Use Serves a New and Distinct Purpose, Not Whether It Alters the Original Work.**

LifeWise's primary response is to claim that the first factor requires that the defendant make a substantial change to the copyrighted work itself. LifeWise Br. 5–6. Decades of fair use jurisprudence says otherwise. This aspect of the Factor One analysis asks whether the use serves a new and distinct purpose, and that criterion can be met in multiple ways other than altering the original work. *See A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009)

("The use of a copyrighted work…can be transformative in function or purpose without altering or actually adding to the original work.").

Accordingly, full verbatim copying is often found to be transformative. *See, e.g., Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 454–55 (1984) (copying entire television programs for later viewing); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015) (copying entire books to enable searching); *Vanderhye*, 562 F.3d at 639–40 (copying entire student papers to detect plagiarism). Moreover, posting copies online or otherwise distributing them widely is a fair use when done for a legally favored purpose.[2] *ASTM II*, 82 F.4th at 1268 (posting complete copies of standards incorporated into law transformative even though defendant "does not alter or add to the standards"); *Katz,* 802 F.3d at 1182 (posting complete photo on defendant's blog); *Facility Guidelines Inst, Inc. v. Upcodes, Inc.*, 677 F.Supp.3d 955, 970 (ED Mo. 2023) (posting models codes incorporated into law); *Am. Soc'y for Testing and Materials v. UpCodes*, 2024 WL 4374117, *8 (E.D. Pa, Oct. 2, 2024) (same); *Online Pol'y Grp. v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1203 (N.D. Cal. 2004) (copying and publishing email archive).

### 4.    Allegations of Bad Faith Do Not Assist the Analysis.

As a backstop, LifeWise leans heavily on its claim that Mr. Parrish acted in bad faith by pretending to be interested in volunteering for LifeWise in order to obtain the curriculum. LifeWise Br. 6–8. On this theory, many investigative reporters also act in bad faith when they

---

[2] The Supreme Court's 2023 decision in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 did not address verbatim copying, and did not hold that such copying is excluded from fair use. Rather, the Court analyzed the physical transformation of a work (in that case, a silkscreen portrait derived from a photograph) as a non-exclusive example of secondary uses that may be transformative. *Id.* at 516–22, 527–32. Following *Warhol*, courts have continued to find that verbatim copying can be fair use. *See, e.g.*, *ASTM II*, 82 F.4th at 1267–68 (citing *Warhol*, 143 S. Ct. at 1275).

use standard investigative techniques, such as joining a factory workforce in order to gain information about factory conditions that is not otherwise available. LifeWise admits that it only provided a brief summary of its curriculum to outsiders, including parents. Parrish RSMF ¶ 17 (citing Cmplt. ¶ 46). Mr. Parrish sought to give parents fuller access so they could better understand what their children might encounter in a LifeWise classroom. *See* Parrish RSMF ¶ 18.

It is true that while the Supreme Court is openly skeptical of the relevance of bad faith to the fair use inquiry, it has declined to expressly reject it. *Google*, 593 U.S. at 32 (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 585 n.18 (1994)). But it is telling that its most recent fair use opinion, which was entirely devoted to Factor One, *ignores bad faith altogether. Warhol*, 598 U.S. at 508. The message is clear: Fair use, like copyright generally, "is not a privilege reserved for the well-behaved." Pierre N. Leval, *Toward a Fair Use Standard*, 103 HARV. L. REV. 1105, 1126 (1990).

*Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832 (Fed. Cir. 1992) and its progeny are unpersuasive on this point. *Contra* LifeWise Br. 7 (citing cases). First, *Atari* predates the guidance offered in *Campbell* and *Google*—the latter by almost two decades. Second, the facts of all three cases cited could hardly be more different: Two involved cut-throat software industry competitors, not a Bible study program and its critic. *Atari Games Corp.*, 975 F.2d. at 836–37; *DSC Corp v. DGI Techs, Inc.,* 898 F. Supp. 1183, 1192–93 (N.D. Tex. 1995). In the last, a *pro se* Canadian defendant had posted clips of videos of internal company activities, such as speeches and a team-building exercise. *TELUS Corp. v Watson*, No. C 07-3434 (VRW), 2009 WL 10703326, at *6 (N.D. Cal. Nov. 13, 2009). These inapposite cases do not justify reviving an outdated view of fair use.

Finally, to the extent the concept has any enduring force in the Factor One fair use analysis, the alleged "bad faith" must closely relate to the *actual purpose* of the use. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985). In *Harper & Row,* for example, the Court found that *The Nation*'s unauthorized use of the original work (an excerpt from an unpublished manuscript of President Ford's memoirs that discussed his decision to pardon former President Nixon) "had not merely the incidental effect but the *intended purpose* of supplanting the copyright holder's commercially valuable right of first publication." *Id.* at 562. Here, LifeWise admits that Mr. Parrish's purpose was not to supplant any commercially valuable right in the curriculum but rather to galvanize opposition to its use. Parrish RSMF ¶ 18 (citing Cmplt. ¶ 31). With this purpose, Mr. Parrish's obtaining and posting the curriculum in the manner of an investigative journalist was not bad faith.

### B. The Nature of the Works Does Not Affect the Inquiry.

Factor Two—the "nature of the copyrighted work"— considers both the "creativity" of the work, as well as whether the work is "published or unpublished." *Bell v. Milwaukee Bd. of Sch. Dirs.*, 2022 WL 18276966, at *5 (E.D. Wis. Dec. 21, 2022). LifeWise's argument that any copying of creative material "fails the second factor," LifeWise Br. 8—regardless of the purpose of the use—is plainly incorrect. In fact, "this factor is generally neutral" where, as here, the work is long since published and contains a mix of both factual and creative elements. *See id.* The nominal creativity of the curriculum simply does not affect the fair use decision "one way or the other." *See Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 178 (2d Cir. 2018) (holding that second factor "plays no significant role" in case involving "modest[ly] transformative" use of "factual works").

Moreover, the "transformative purpose" of Mr. Parrish's use is inextricable from the nature of the work in question. *Authors Guild*, 804 F.3d at 220 ("While the 'transformative

purpose' inquiry discussed above is conventionally treated as a part of first factor analysis, it inevitably involves the second factor as well. One cannot assess whether the copying work has an objective that differs from the original without considering both works, and their respective objectives."). Here, Mr. Parrish's use of the curriculum was "not related to its mode of expression," so the creativity of that expression is entitled to even less weight. *Red Label Music Pub., Inc. v. Chila Prods.,* 388 F. Supp. 3d 975, 985 (N.D. Ill. 2019) (quoting *Bouchat v. Baltimore Ravens Ltd. P'ship,* 737 F.3d 932, 943 (4th Cir. 2013), *as amended* (Jan. 14, 2014)); *see also, e.g., American Inst. of Physics v. Winstead PC,* 2013 WL 6242843, at *5 (N.D. Tex. Dec. 3, 2013) (where a document is used for an evidentiary purpose, its expressive content is "merely incidental"); *Bill Graham Archives v. Dorling Kindersley Ltd.,* 448 F.3d 605, 610, 612 (2d Cir. 2006) (where artwork is reproduced as "historical artifacts," its creative content "has limited weight").

### C. Mr. Parrish Used Only What Was Necessary for His Purpose.

Factor Three, substantiality, favors fair use where, as here, "the amount of copying was tethered to a valid, and transformative purpose." *Google,* 593 U.S. at 34. A fair use copier may use whatever material is "reasonably necessary" to "pursue…the aim of criticizing the copyrighted work effectively." *Chicago Bd. of Educ. v. Substance, Inc.,* 354 F.3d 624, 629 (7th Cir. 2003).

As LifeWise concedes, LifeWise Br. 9, "the cases are clear that a complete copy is not per se an unfair use." *Ty, Inc. v. Publ'ns Int'l Ltd.,* 292 F.3d 512, 521 (7th Cir. 2002). When a user copies an entire work, the inquiry remains the same: whether the use was reasonable in light of its purpose. *See, e.g., Sony,* 464 U.S. at 449-50 (copying of entire television programs for time-shifting is fair use); *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 544 (6th Cir. 2004) (copying of entire computer program as required for compatibility with

printer is fair use); *Swatch Grp.,* 756 F.3d at 90 (copying and distribution of entire recordings of press conferences was "reasonable in light of its purpose of disseminating important financial information to investors and analysts"); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 821 (9th Cir. 2003) (copying of "images as a whole" was "reasonable…in light of [defendant's] use of the images" to visually display search engine results because partial copying would "reduc[e] the usefulness of the visual search engine").

Mr. Parrish's use of the entire curriculum was reasonable in light of his dual purpose: making a persuasive public argument against the curriculum and disseminating the curriculum to other parents so that they could form their own opinions. LifeWise incorrectly claims that Mr. Parrish "lazily dumped the entire Curriculum onto the Internet without engaging in any substantive criticism." LifeWise Br. 10. In fact, as discussed in Section II.A.2 above, the Parents Against Lifewise website presents a thorough critique of the LifeWise Academy program, using the curriculum as the best, most convincing evidence. Posting the full curriculum avoids the charge of cherry-picking exceptionally shocking snippets while omitting others. Like that of the defendant in *Swatch Group*, Mr. Parrish's "faithful reproduction" of the "exact" curriculum "was reasonably necessary to convey [its] full meaning," because "disseminating a full, unadulterated" copy of the curriculum enabled Mr. Parrish "to convey valuable factual information that would have been impaired if [Mr. Parrish] had undertaken to alter the [curriculum] by interjecting [his] own interpretations." *Swatch Grp.*, 756 F.3d at 85, 90. Mr. Parrish's "purpose, in other words, was to publish this factual information to an audience from which [LifeWise's] purpose was to withhold it." *Id.* at 85.

Moreover, the Parents Against LifeWise website calls out the specific risks of cherry-picking, criticizing *LifeWise* for publicizing some aspects of its programming while "refus[ing]

to release" the curriculum itself and thereby hiding more controversial aspects. Parrish RSMF ¶ 11. One possible way to respond would be with the critics' own cherry-picking: selecting LifeWise's most controversial statements, such as, for example, "[w]hen faced with a choice to obey God or our parents, we should always obey God first;" or that a student's parents are sinners if they are divorced. Parrish RSMF ¶¶ 23–24. But another reasonable response is to publish the entirety so that the audience can decide for themselves, in light of the full context.

That response is particularly justifiable here. Unlike the standardized tests at issue in *Chicago Board of Education v. Substance, Inc*., 354 F.3d 624 (7th Cir. 2003), the materials at issue here are intended for dissemination "within a classroom setting with student learners"— they are only hidden from parents.  Parrish RSMF ¶ 15. Further, in *Chicago Board of Education,* publishing the entire standardized tests made them useless as tests. Here, publishing the entire curriculum does nothing to diminish its utility as teaching material.[3]

### D.    Mr. Parrish's Use Would Not Affect Any Actual or Reasonably Likely Market.

Factor Four considers the effect of the use on the market for the work. In its motion LifeWise's claims of market harm boil down to just two premises: that Mr. Parrish's posting effectively competes with LifeWise because it allows visitors to obtain the curriculum for free;

---

[3] LifeWise's argument that Mr. Parrish should have "lawfully acquired the Curriculum" from LifeWise's website and posted a summary or a critical review with quotations or screenshots, LifeWise Br. 9–10, is disingenuous. At the time of Mr. Parrish's use, LifeWise made only a summary available, Parrish RSMF ¶ 17, and even now it concedes that the curriculum is only available to parents for 24 hours, and readers must agree not to "copy, print, download, [or] screenshot," LifeWise Br. 10—all things one would need to do in order to create the hypothetical use LifeWise imagines.

and that it is "highly likely" that "local programs" will download the program from the Parents Against Lifewise website.[4]

Neither of these claims holds up to even minimal scrutiny. As to the first, LifeWise concedes that Mr. Parrish does not seek to compete with LifeWise; he is a critic who is concerned that the curriculum is being taught to public school students at all. Parrish RSMF ¶ 18. And contrary to LifeWise's repeated assertions, Mr. Parrish did not "dump[] the Curriculum onto the Internet." LifeWise Br. 10. The parties agree that Mr. Parrish posted it on a specific critical site, to "galvanize" opposition to that very program. Parrish RSMF ¶ 18. An unwitting visitor who finds the curriculum on the Parents Against LifeWise site "innocently through Internet searches," LifeWise Br. 13., would be presented with the case *against* the curriculum from the moment they saw the name of the website. Parrish RSMF ¶ 11.

As to the second, Mr. Parrish does not concede that it is "highly likely" that local chapters will download the curriculum from the website. *Contra* LifeWise Br. 12. All plausible inferences run to the contrary: even assuming they are not deterred by the criticism on the site, as Bible educators it is surely reasonable to infer that such chapters would not base that education on unlawfully acquired materials. They, like Mr. Parrish, are not pirates. Moreover, the hypothetical possibility that the curriculum may be copied *by others* for commercial or competitive purposes does not weigh against fair use here; fair use must be analyzed separately for each "specific use." *Warhol*, 598 U.S. at 533 (quotation omitted). LifeWise is free to pursue claims against local chapters who may have a less transformative, less justified purpose. But it

---

[4] LifeWise's Complaint suggests two more claims about market harm: that Mr. Parrish himself did not pay a licensing fee, and that LifeWise's investment of "time and money" makes unauthorized use into a market harm. Cmplt. ¶¶ 47, 51. Mr. Parrish addressed these arguments in his reply in support of his motion to dismiss, ECF No. 28 at 10–13. LifeWise does not raise them in its summary judgment motion.

cannot use those distinct hypothetical uses to show that *Mr. Parrish's use* has or will affect its licensing market.

The cases upon which LifeWise relies to persuade the Court that actual or potential effects on the market are nonetheless "fairly obvious" are inapposite. LifeWise. Br 12–13. Most of the quoted language states the undisputed proposition that copyright is intended to incentivize and reward creativity. *Id.* Other cases concern dramatically different facts. *United States v. Slater*, 348 F.3d 666 (7th Cir. 2003), for example, concerned the criminal prosecution of a group "dedicated to the unauthorized dissemination of copyrighted software over the Internet." *Id.* at 667. *Chicago Board of Education* concerned the publication of standardized tests, a use that, due to the peculiar nature of such tests, necessarily destroyed their value and undermined academic freedom. 354 F.3d at 630. LifeWise does not contend that the curriculum is now useless and, like a published test, must be thrown away and rewritten.

As for *Sony*, the possibility this particular use could became widespread does not help LifeWise's case: Copyright holders can claim lost licensing fees as a market harm only if there is a "traditional, reasonable, or likely to be developed market[ ]" for the use. *Am. Geophysical Union v Texaco, Inc.*, 60 F.3d 913, 930 (2d Cir. 1994). There is no market for the noncommercial sharing of the curriculum in order to "galvanize" opposition to that very curriculum, whether a single parent does it or many.

If anything, *Sony* supports a finding of fair use here, because it expressly rebuffs the notion that courts may presume market harm where the use is noncommercial:

> What is necessary is a showing by a preponderance of the evidence that some meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed. But, if it is for non-commercial purpose, the likelihood must be demonstrated.

*Sony* , 464 U.S. at 451.  Given that Mr. Parrish's use is indisputably noncommercial, this Court need not accept a vague claim that the harm is "fairly obvious;" LifeWise must demonstrate it is *likely*. It has not and cannot.

The Second Circuit's erroneous acceptance of a copyright-holders' "common-sense" theory of harm in *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 194-95 (2d Cir. 2024) doesn't help LifeWise either. In that case, the plaintiffs at least offered expert evidence to buttress their claims of harm. Further, because the court also found that the use at issue was not transformative, it accepted the inference that widespread replication of the use by others could "decimate" the plaintiffs' markets. Here, LifeWise offers nothing but supposition to support its theory, and Mr. Parrish's use is clearly transformative. *Compare ASTM II,* 82 F.4th at 1271 (rejecting claim of market harm based on "a common-sense inference: If users can download an identical copy of [a work], few will pay to buy [it]" where the inference was unlikely as well as unsupported); *Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1263-64 (2d Cir. 1986) (plaintiff cannot rely on unsupported allegations of future harm); *see generally* Patry on Fair Use, §§ 6-7 (2024).

Finally, the Supreme Court has held that because the goal of fair use is "to ensure that a copyright holder's monopoly does not harm the public interest," the Factor Four analysis must consider "the public benefits the copying will likely produce." *Google,* 593 U.S. at 29-35 ; *see also Design Basics, LLC v. Signature Constr., Inc*., 994 F.3d 879, 882 (7th Cir. 2021); *Cambridge Univ. Press v. Patton*, 769 F.3d 1232, 1267 (11th Cir. 2014); *Blanch v. Koons*, 467 F.3d 244, 254 (2d Cir. 2006); *Sega Enterprises Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1523 (9th Cir. 1992).

The public interest is abundantly clear here. Mr. Parrish's posting facilitates informed public debate about the issue of "released time religious instruction" of public school students, and the broader question of the proper role of religion in public schools. At least 2,500 parents have joined a Facebook group for those concerned about LifeWise's work specifically, Parrish RSMF ¶ 19, and the general issue has led to multiple legal challenges. *See, e.g.*, *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187–88 (4th Cir. 2018) (legal challenge to Bible classes taught in public school, alleging school pressure to participate); *Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 601 (4th Cir. 2012) (similar). Ensuring that copyright does not inhibit public discussion is a core purpose of fair use. 17 U.S.C §107 ("the fair use of a copyrighted work . . . for purposes such as criticism, comment. . . or research, is not an infringement of copyright"); *see Online Pol'y Grp.*, 337 F. Supp. 2d at 1203 (finding fair use of internal corporate communications about election integrity because, in part, "[i]t is hard to imagine a subject the discussion of which could be more in the public interest.").

Rhetoric and speculation are not enough to tilt Factor Four against fair use, much less support summary judgment against Mr. Parrish.

<u>**CONCLUSION**</u>

The Seventh Circuit forbids exactly what LifeWise tries to do here: use copyright to "suppress criticism" that depends on an appropriate use of "comprehensive" copies in a critical context. *Ty, Inc.*, 292 F.3d at 521. LifeWise fails to provide admissible support for the facts it must prove. And LifeWise cannot rely on its own self-interested statements to overcome the ample actually admissible evidence in support of Mr. Parrish's fair use defense. The Court should deny LifeWise's motion and enter judgment for Mr. Parrish.

Dated: October 15, 2024                    Respectfully submitted,


                                           s/ Mitchell L. Stoltz

                                           Mitchell L. Stoltz (*admitted pro hac vice*)
                                           Corynne McSherry (*admitted pro hac vice*)
                                           Victoria J. Noble (*admitted pro hac vice*)
                                           ELECTRONIC FRONTIER FOUNDATION
                                           815 Eddy Street
                                           San Francisco, CA 94109
                                           Telephone: (415) 436-9333
                                           Facsimile: (415) 436-9993

                                           William A. Ramsey, #26547-53
                                           BARRETT MCNAGNY LLP
                                           215 E. Berry Street
                                           Fort Wayne, IN 46802
                                           Telephone: (260) 423-9551
                                           Fax: (260) 423-8920
                                           Email: war@barrettlaw.com

                                           *Attorneys for Defendant Zachary Parrish*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th of October 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which shall provide notification by email of such filing to all counsel of record.

s/ Mitchell L. Stoltz
Mitchell L. Stoltz
